```
 1              IN THE UNITED STATES DISTRICT COURT
              FOR THE NORTHERN DISTRICT OF IOWA
 2

 3   UNITED STATES OF AMERICA,    )
                                  )
 4               Plaintiff,       )
                                  )
 5        VS.                     )    CR 16-1011
                                  )
 6   CAMRON PETE, JR.,            )
                                  )
 7               Defendant.       )

 8

 9                       APPEARANCES:

10   ATTORNEY TIMOTHY LAWRENCE VAVRICEK, Assistant U.S.
     Attorney, 111 Seventh Avenue S.E., Box 1, Cedar Rapids,
11   Iowa 52401, appeared on behalf of the United States.

12   ATTORNEY DENNIS EVAN McKELVIE, of the McKelvie Law
     Office, 810 Fifth Avenue, P.O. Box 213, Grinnell, Iowa
13   50112, appeared on behalf of the Defendant.

14

15                     SENTENCING HEARING,

16          HELD BEFORE THE HON. LINDA R. READE,

17   on the 2nd day of November, 2016, at 111 Seventh Avenue

18   S.E., Cedar Rapids, Iowa, commencing at 1:28 p.m., and

19   reported by Patrice A. Murray, Certified Shorthand

20   Reporter, using machine shorthand.

21   Transcript Ordered:  12/1/16
     Transcript Completed:  12/20/16
22

23            Patrice A. Murray, CSR, RPR, RMR, FCRR
                   United States District Court
24                111 Seventh Avenue S.E., Box 4
                   Cedar Rapids, Iowa 52401-2101
25                        (319) 286-2338
```

*Contact Patrice Murray at 319-286-2338 or patrice_murray@iand.uscourts.gov to purchase a complete copy of the transcript.*

Case 2:16-cr-01011-CJW-MAR Document 102 Filed 12/20/16 Page 1 of 37

<pre>
1                         INDEX

2


3


4                        EXHIBITS

5                                              O      R

6   Exhibit No. 1---Handgun                    9      11

7   Exhibit No. 2---DCI Lab Report             9      11

8   Exhibit No. 3---Video                      9      11

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
</pre>

*Contact Patrice Murray at 319-286-2338 or patrice_murray@iand.uscourts.gov*
*to purchase a complete copy of the transcript.*
Case 2:16-cr-01011-CJW-MAR Document 102 Filed 12/20/16 Page 2 of 37

```
 1        (The following proceedings were held in open court.)

 2            THE CLERK:  In Criminal Matter 16-1011, United

 3   States of America versus Camron Andrew Pete, Jr., on for

 4   sentencing hearing.  The United States Probation Office

 5   is represented by Patrick Korth by teleconference.

 6        Counsel, please state your appearances.

 7            MR. VAVRICEK:  Tim Vavricek for the United

 8   States.

 9            MR. McKELVIE:  Dennis McKelvie for the

10   defendant.

11            THE COURT:  And Mr. Pete is personally present.

12        Mr. Pete, do you recall being in court on April 25,

13   2016, and pleading guilty to Count 5 of the superseding

14   indictment, charging you with being a prohibited person

15   in possession of a firearm?

16            THE DEFENDANT:  Yes, Your Honor.

17            THE COURT:  The penalty for this offense can be

18   a prison term as long as 10 years, followed by a

19   supervised release term that could be as long as 3 years.

20   Probation is an option.  Were it granted, it would be 1

21   to 5 years in duration.  Your fine could be as much as

22   $250,000.  There are victims of this offense, it's my

23   understanding, and the government can correct me --

24        (Disturbance from the gallery.)

25            THE COURT:  I'm sorry, that child is going to
```

*Contact Patrice Murray at 319-286-2338 or patrice_murray@iand.uscourts.gov*
*to purchase a complete copy of the transcript.*

Case 2:16-cr-01011-CJW-MAR   Document 102   Filed 12/2016   Page 3 of 37

1   have to go out.

2       The government can correct me, but it's my

3   understanding that the victims have not submitted a

4   victim impact statement or requested restitution, nor

5   requested to speak here.

6       Special assessment, $100.

7       Mr. Pete, do you remember your attorney going

8   through these provisions with you prior to the time you

9   appeared in court and gave your plea of guilty?

10          THE DEFENDANT:  Yes, Your Honor.

11          THE COURT:  Do you understand you are in court

12  today for the purpose of being sentenced on your plea of

13  guilty?

14          THE DEFENDANT:  Yes, Your Honor.

15          THE COURT:  Is your plea still guilty?

16          THE DEFENDANT:  Yes, Your Honor.

17          THE COURT:  The Court has received and read the

18  presentence investigation report, Document 63, dated

19  September 14, 2016.  The parties have filed documents

20  with the Court, sentencing memos and the like, some

21  exhibits, and I'll let the attorneys speak to their

22  exhibits at the appropriate time.  Just prior to the

23  hearing and based on an e-mail that both Mr. McKelvie and

24  I received this morning, I did receive a disk, which now

25  I think is Government Exhibit 3.  I didn't have a chance

*Contact Patrice Murray at 319-286-2338 or patrice_murray@iand.uscourts.gov*
*to purchase a complete copy of the transcript.*

Case 2:16-cr-01011-CJW-MAR   Document 102   Filed 12/20/16   Page 4 of 37

```
 1    to watch it.  It's my understanding that Agent Tim Hunt

 2    from ATF has been called to assist in the investigation

 3    of the shooting in Des Moines and is not able to be with

 4    us and that Mr. McKelvie has agreed that this disk can be

 5    played in his absence.

 6         Is that so, Mr. McKelvie?

 7              MR. McKELVIE:  Yes, Your Honor.

 8              THE COURT:  All right.  Other than what's in

 9    the official records of the court, the Court has no

10    independent information concerning this case or Mr. Pete.

11         Mr. Vavricek, have you been through the presentence

12    investigation report?

13              MR. VAVRICEK:  Yes, Your Honor.

14              THE COURT:  After so doing, any remaining

15    objections from the government's point of view as to the

16    scoring of the advisory guideline sentence?

17              MR. VAVRICEK:  No, Your Honor.

18              THE COURT:  Mr. McKelvie, have you and Mr. Pete

19    been through the presentence investigation report?

20              MR. McKELVIE:  Yes, Your Honor.  When the draft

21    report came out, I went to the Linn County Jail, reviewed

22    that with Mr. Pete, left a copy with him for review.  We

23    made certain objections that I'll address in a second.

24    When the final presentence report came out, I also took a

25    copy over to him at the Linn County Jail and went through
```

*Contact Patrice Murray at 319-286-2338 or patrice_murray@iand.uscourts.gov*
*to purchase a complete copy of the transcript.*

Case 2:16-cr-01011-CJW-MAR   Document 102   Filed 12/2/2016   Page 5 of 37

1    that.  As the Court notes from our sentencing memorandum

2    and brief, we're objecting primarily to two things.  One

3    is the 6-level enhancement for possession of an extended

4    magazine; and the second one is we're objecting to a

5    4-point increase, stating that the underlying state

6    conduct is essentially the same as the federal charge and

7    that adding the increase would be in violation of the

8    sentencing guidelines and not fair.

9         In that regard, Your Honor, I note that I made a

10   mistake in the sentencing memorandum by arguing that the

11   under -- that the federal charge was a person -- or a

12   felon in possession of a firearm, instead of saying as a

13   prohibited person.  It's the same argument.  I think it's

14   a status crime, and, therefore, I don't think it affects

15   the argument that I've made.  So those are our

16   objections, Your Honor.

17            THE COURT:  All right.

18            MR. McKELVIE:  And, Your Honor, I'm sorry,

19   insofar as there's any suggestion that the Court can't

20   make a finding based on the presentence report regarding

21   the underlying facts of the case, we have no intention,

22   and I've just discussed this with Mr. Pete, of creating

23   any situation where the Court would find there's an

24   obstruction of justice or any kind of impediment to the

25   Court's decision-making process in this case factually.

*Contact Patrice Murray at 319-286-2338 or patrice_murray@iand.uscourts.gov*
*to purchase a complete copy of the transcript.*

Case 2:16-cr-01011-CJW-MAR   Document 102   Filed 12/20/16   Page 6 of 37

1   I think once we present the exhibits here, the Court will
2   be able to make a decision.
3           THE COURT:  All right.  With regard to the
4   scoring of the 4 levels at Paragraph 22, possession of a
5   firearm or ammunition in connection with another felony
6   offense, the Probation Office has cited two underlying
7   Iowa felonies, carrying weapons, a violation of Iowa Code
8   Section 724.4, and going armed with intent, Iowa Code
9   Section 708.8.  Do you recognize the Eighth Circuit case
10  of *United States versus Walker*, 771 F.3d 449, Eighth
11  Circuit 2004, as being binding precedent on this Court
12  for scoring the carrying weapons?
13          MR. McKELVIE:  I believe I do, Your Honor.
14          THE COURT:  All right.  And then, in addition
15  to that, and Mr. Vavricek may wish to talk about the
16  elements of going armed with intent, but as far as I
17  know, I'm not sure that there's any case directly on
18  point, but we can talk about that.
19      Okay.  So basically, it's -- the objection is to the
20  base offense level, with defendant arguing that the
21  20-level base offense level is not appropriate because
22  the semiautomatic firearm was not capable of accepting a
23  large capacity magazine.  In terms of the plea that was
24  taken, he was a prohibited person because he was a drug
25  user, correct?

*Contact Patrice Murray at 319-286-2338 or patrice_murray@iand.uscourts.gov*
*to purchase a complete copy of the transcript.*

Case 2:16-cr-01011-CJW-MAR   Document 102   Filed 12/20/16   Page 7 of 37

1          MR. VAVRICEK:  Correct.

2          THE COURT:  All right.  I do think that does

3    change fairly significantly the arguments as to Paragraph

4    22, but I'll let the parties talk about that.

5      Mr. Pete, do you remember when Mr. McKelvie came

6    over to the jail and talked to you about the presentence

7    investigation report?

8          THE DEFENDANT:  Yes, Your Honor.

9          THE COURT:  And do you remember that he went

10   through it paragraph by paragraph with you?

11         THE DEFENDANT:  Yes, Your Honor.

12         THE COURT:  And he said he left a copy with

13   you.  Did you actually read that report?

14         THE DEFENDANT:  Yes, Your Honor.

15         THE COURT:  And I see you do not have a high

16   school education, nor do you have a GED.  In spite of a

17   formal education, are your reading skills such that you

18   could actually read this report with your own eyes and

19   understand what you were reading?

20         THE DEFENDANT:  Yes, Your Honor.

21         THE COURT:  All right.  Then the issues are

22   squared off.  The government has the burden to prove the

23   base offense level scoring at Paragraph 20 and the

24   scoring at 22, possession in connection with another

25   felony offense.  I also think that the government has an

*Contact Patrice Murray at 319-286-2338 or patrice_murray@iand.uscourts.gov*
*to purchase a complete copy of the transcript.*

Case 2:16-cr-01011-CJW-MAR   Document 102   Filed 12/20/16   Page 8 of 37

1    upward departure motion, and so we'll take that up at the

2    appropriate time.  It's my understanding that the *Davis*

3    case is what is being relied on by Mr. McKelvie for the

4    base offense level objection, and I've read that.

5         Mr. Vavricek, I'll accept any evidence or argument

6    that you'd like to make on those two issues.

7              MR. VAVRICEK:  Thank you, Your Honor.  And I

8    also would like to again thank Mr. McKelvie for his

9    courtesies in this matter.  I think -- we've talked about

10   this -- the facts seem to be themselves undisputed, and I

11   appreciate that we're able to just get to the point of

12   the matter, and Your Honor can make Your Honor's ruling.

13        We have three exhibits.  The first is the firearm

14   with the magazine, so I would ask for permission to

15   approach with that.

16             THE COURT:  Yes.

17        (Mr. Vavricek approached the bench.)

18             MR. VAVRICEK:  We would at this time move to

19   admit Exhibit 1 and Exhibit 2, which we have an amended

20   version filed yesterday.  The only difference in the

21   amendment from the original version is, at Mr. McKelvie's

22   request, I added an e-mail that the DPS lab examiner had

23   written some additional commentary.  And then Exhibit 3

24   is the video Your Honor mentioned, and I'd be happy to

25   play that when Your Honor is ready.

*Contact Patrice Murray at 319-286-2338 or patrice_murray@iand.uscourts.gov*
*to purchase a complete copy of the transcript.*

Case 2:16-cr-01011-CJW-MAR  Document 102  Filed 12/20/16  Page 9 of 37

THE COURT: All right. So if I understand the gist of this, in terms of the extended magazine, the first shot goes off without any problem, and the second shot would go off and subsequent shots but the trigger has to be manually reset in order for the subsequent shots to be fired.

MR. VAVRICEK: Correct. And what you'll -- I hope you'll be able to see on the video of Agent Hunt is, he's wearing these blue easy-to-see gloves, and he'll fire the first shot, and he uses his finger to push the trigger forward. You'll recall in the *Davis* case -- and I don't want to get too much into argument in this case -- but there was no trigger.

THE COURT: Right.

MR. VAVRICEK: Here, we have a trigger that just doesn't work quite right. But I think, Your Honor, the way it's in the box, the magazine is not in the gun, but it does, as the report states, fit right in there.

THE COURT: All right. Let's go ahead then, and -- any objection to the playing then of Exhibit 3?

MR. McKELVIE: No, Your Honor.

THE COURT: All right. And Exhibit 2 is received without objection, correct?

MR. McKELVIE: That is correct.

THE COURT: All right. And I have Exhibit 1,

*Contact Patrice Murray at 319-286-2338 or patrice_murray@iand.uscourts.gov to purchase a complete copy of the transcript.*

1    and I'm looking at it.  And I'll be returning it to

2    Dubuque PD for safekeeping after this hearing.

3          (Whereupon, Exhibits 1, 2, and 3 were received.)

4              MR. VAVRICEK:  Without further ado then.

5          (Whereupon, the recording was played.)

6              THE COURT:  All right.  Any other evidence?

7              MR. VAVRICEK:  No other evidence, Your Honor.

8              THE COURT:  All right.  Mr. McKelvie, do you

9    have evidence on this issue?

10             MR. McKELVIE:  No, Your Honor.

11             THE COURT:  All right.  Then let's proceed with

12   any argument that you wish to make.  And both parties

13   have briefed the law on the guideline issue, but anything

14   you want to draw my attention to.

15             MR. VAVRICEK:  I'll be very brief, Your Honor.

16   Just to stress that under the plain language of the

17   guideline, this firearm and magazine clearly qualifies.

18   It is capable of accepting that magazine.  The *Davis*

19   case, the language upon which the defendant relies, first

20   and foremost, is dicta.  It imagines a possible case in

21   which the Eighth Circuit might view matters differently.

22   But that would be the extreme case where inserting the

23   magazine into the firearm rendered it inoperable.  This

24   was not inoperable.  It seems it's undisputed that it

25   fires, so we believe it operates then.  Certainly, it has

*Contact Patrice Murray at 319-286-2338 or patrice_murray@iand.uscourts.gov*
*to purchase a complete copy of the transcript.*

Case 2:16-cr-01011-CJW-MAR  Document 102  Filed 12/20/16  Page 11 of 37

1   an issue with the trigger, but no greater issue certainly

2   than missing a trigger, for example.  The agent, as you

3   can see from the video, is fairly easily able to

4   manipulate it by pushing it forward.  Does that take a

5   little more time?  Yes, than if it worked perfectly.  But

6   to the policy argument that the defendant has raised,

7   it's not a case -- you know, it's certainly easier than

8   reloading and going through that process.  So we submit

9   that the guideline clearly applies.

10      I would note, going through this again last night,

11  that at the scene of the shooting, there was recovered a

12  16-round magazine.  That magazine is also a high-capacity

13  magazine under the guideline, and that, according to

14  amended Exhibit 2, did fit in the firearm, and there were

15  no issues noted in the report.  So we believe that the

16  enhancement here clearly applies.  Thank you.

17          THE COURT:  Mr. McKelvie.

18          MR. McKELVIE:  Thank you, Your Honor.  I think

19  it's a fairly interesting issue, because apparently the

20  magazine itself is not operating properly, and I don't

21  think there's -- certainly no factual issue about what's

22  happening here.  One would assume that a person would

23  want a large-capacity magazine in a semiautomatic weapon

24  to be able to fire however many rounds that magazine held

25  without having a malfunction.  So apparently, what -- the

*Contact Patrice Murray at 319-286-2338 or patrice_murray@iand.uscourts.gov*
*to purchase a complete copy of the transcript.*

Case 2:16-cr-01011-CJW-MAR   Document 102   Filed 12/20/16   Page 12 of 37

```
 1   report seems to indicate that maybe more than one shot
 2   was fired on occasion before the trigger had to be reset,
 3   but on the video that we saw, it had to be reset on each
 4   occasion, and, therefore, we just submit, under *Davis*,
 5   one of the cases cited, which is *United States versus*
 6   *Mullins*, whether a firearm is operable or inoperable is a
 7   question of fact, so I guess that's the situation here,
 8   and we respectfully ask the Court to find that the
 9   large-capacity magazine was inoperable to the extent that
10   the defendant should not receive a 6-level increase.
11   Thank you.
12           THE COURT:  All right.  Then let's go on to
13   talk about the 4-level increase under Paragraph 22.
14   Mr. McKelvie does note that, basically, the Eighth
15   Circuit has already spoken on the issue raised by him, as
16   to going armed -- or, no, as to carrying weapons.  What
17   about going armed with intent?  What are the elements,
18   and is the government alternatively or also relying on
19   708.8 of the Iowa Code?
20           MR. VAVRICEK:  For purposes of this proceeding,
21   Your Honor, we would intend to rely solely on *Walker*,
22   which is squarely governed by the Eighth Circuit.  The
23   one possible issue with going armed with intent is if
24   Your Honor would be inclined to depart upward because of
25   the shooting, we would want to avoid any
```

*Contact Patrice Murray at 319-286-2338 or patrice_murray@iand.uscourts.gov*
*to purchase a complete copy of the transcript.*

Case 2:16-cr-01011-CJW-MAR   Document 102   Filed 12/20/16   Page 13 of 37

```
1   double-counting-type concerns, and clearly there are
2   three possible harms here:  Possessing a firearm as a
3   prohibited person; violating the carrying weapons statute
4   by having a loaded weapon in the car; and then firing
5   those weapons.  And so to keep things straight for this
6   proceeding, we would just rely on the *Walker* case.
7              THE COURT:  And in terms of how the government
8   thinks 724.4 applies, which aspect of that statute are
9   you relying on and what does the evidence show?
10             MR. VAVRICEK:  I apologize, I do not have the
11  Iowa Code section in front of me --
12             THE COURT:  All right.
13             MR. VAVRICEK:  -- to indicate which we are
14  relying on.
15             THE COURT:  All right.  Well, under Sub 1, it
16  says "Except as otherwise provided in this section, a
17  person who goes armed with a dangerous weapon concealed
18  on or about the person, or who within the city limits of
19  any city goes armed with a pistol or revolver or any
20  loaded firearm of any kind, whether concealed or not, or
21  who knowingly carries or transports in a vehicle a pistol
22  or revolver commits an aggravated misdemeanor," so I'm
23  assuming you are relying on the last one?
24             MR. VAVRICEK:  Yes, with carrying weapons, yes,
25  that's correct.
```

*Contact Patrice Murray at 319-286-2338 or patrice_murray@iand.uscourts.gov*
*to purchase a complete copy of the transcript.*

Case 2:16-cr-01011-CJW-MAR  Document 102  Filed 12/20/16  Page 14 of 37

1           THE COURT:  So I think that the evidence does

2     provide the elements that Mr. Pete carried or transported

3     in a motor vehicle a pistol or revolver, and so I think

4     that is satisfied.

5           As for the base offense level, the Court finds that

6     the appropriate base offense level is 20; and for the

7     reasons articulated by Mr. Vavricek, this is the

8     appropriate base offense level.  Clearly, the magazine

9     will operate in -- this large-capacity magazine will and

10    does operate in the firearm at issue, and it does fire.

11    It doesn't render the firearm inoperable, and so that is

12    correctly scored.  2 levels for between 3 and 7 firearms.

13    4 levels for carrying weapons.  2 levels for obstruction

14    of justice.  Gives us an adjusted offense level of 28.

15          The issue of acceptance of responsibility is

16    generally an issue, where there's obstruction of justice,

17    so I'll let the parties speak to that; and then we'll

18    talk about the departure for actually firing the weapon.

19          All right.  So, Mr. Vavricek, do you want to talk

20    about the departure, and then I'll let Mr. McKelvie talk

21    about acceptance of responsibility and also the

22    departure, the Court noting that in the normal case,

23    except if it's an unusual set of circumstances, if you

24    receive obstruction of justice, you can't get acceptance

25    of responsibility.  And there are exceptions to that.

*Contact Patrice Murray at 319-286-2338 or patrice_murray@iand.uscourts.gov*
*to purchase a complete copy of the transcript.*

Case 2:16-cr-01011-CJW-MAR   Document 102   Filed 12/20/16   Page 15 of 37

1  It's not an ironclad rule.  It depends on the facts and
2  circumstances of the case.

3       So, Mr. Vavricek, may I start the conversation with
4  you, please.

5            MR. VAVRICEK:  Yes, thank you, Your Honor.  The
6  government -- as indicated in its brief, the Probation
7  Office had identified under 5K2.6 a potential upward
8  departure here.  We do argue for an upward departure.
9  This case is much different than the sort of, to use an
10 old phrase, mine-run prohibited person in possession of a
11 firearm case in so far as this defendant went to Spruce
12 Street and fired this extended-capacity firearm, and
13 posing a great risk of danger to individuals in the area.
14 And for that reason, the Court should, to the
15 extent they're -- I believe his guideline range, even
16 with acceptance, will come quite close to the statutory
17 maximum.  The Court should sentence this defendant near
18 or at the statutory maximum for this crime.

19      The guidelines recognize explicitly that a
20 substantial sentence increase may be appropriate where a
21 firearm is discharged.  And there is a recent case from
22 this year of *Webster*, where the Court affirmed a maximum
23 120-month sentence where the defendant not only possessed
24 the firearm but also discharged it, because the
25 guidelines simply do not otherwise capture what really

*Contact Patrice Murray at 319-286-2338 or patrice_murray@iand.uscourts.gov*
*to purchase a complete copy of the transcript.*

Case 2:16-cr-01011-CJW-MAR  Document 102  Filed 12/20/16  Page 16 of 37

1  happened here.  Thank you.

2          THE COURT:  Mr. McKelvie.

3          MR. McKELVIE:  Thank you, Your Honor.  A couple

4  of things.  First, as far as acceptance of

5  responsibility, there's a couple of things, I guess.

6  First off, once the underlying facts were identified,

7  that created the 2-point upward departure for obstruction

8  of justice.  Mr. Pete admitted the facts of that case,

9  and it seems like it would be sort of a policy issue and

10  also sort of an unfairness to some degree not to then

11  afford him some benefit, because what we have in the way

12  of points for somebody pleading is sort of cooperation,

13  taking some of the burden off the government and the

14  courts, and a person admitting that what they've done is

15  wrong and accepting that responsibility.  Your Honor, we

16  just submit, it's sort of a different issue, and that

17  because it is, that he should receive the 2 points for

18  accepting responsibility and for pleading to the charge.

19  So that's that issue, Your Honor.

20          THE COURT:  All right.

21          MR. McKELVIE:  And then regarding the

22  government's request for upward departure, again, really,

23  what we've started out with is a pretty low base level

24  for a prohibited person in possession of a firearm, and

25  by virtue of different aspects of the guidelines, keep

*Contact Patrice Murray at 319-286-2338 or patrice_murray@iand.uscourts.gov to purchase a complete copy of the transcript.*

Case 2:16-cr-01011-CJW-MAR  Document 102  Filed 12/20/16  Page 17 of 37

1  adding more and more and more things, pretty much because

2  the person possessed the firearm.  And the Court's

3  already ruled on one of those things.  Granted, the

4  firing of a shot is not a good thing.  But we just

5  respectfully request when the Court takes a look at this

6  overall situation here, that that upward departure not be

7  granted and that he be given his cooperation points, Your

8  Honor.

9         THE COURT:  You mean his acceptance points?

10        MR. McKELVIE:  That's what I mean, Your Honor.

11        THE COURT:  Okay.  I just wanted to make sure

12 we were on the same page.  Anything else you want to say

13 on those guideline issues, Mr. Vavricek?

14        MR. VAVRICEK:  With respect to acceptance, he

15 did plead guilty.  He hasn't challenged any of the facts

16 here.  He admitted the obstructive conduct, and if the

17 Court grants acceptance, we will make the additional

18 motion.

19        THE COURT:  All right.  Thank you.  Then the

20 Court will grant a 2-level reduction for acceptance of

21 responsibility.  And the government, then, are you moving

22 for the third level?

23        MR. VAVRICEK:  We do.

24        THE COURT:  Then we're left with total offense

25 level 25.  He's criminal history category IV.  So the

*Contact Patrice Murray at 319-286-2338 or patrice_murray@iand.uscourts.gov*
*to purchase a complete copy of the transcript.*

Case 2:16-cr-01011-CJW-MAR   Document 102   Filed 12/20/16   Page 18 of 37

 1   guideline range of imprisonment, before any upward

 2   departures or downward departures or adjustments up or

 3   down, 84 to 105 months, followed by a supervised release

 4   term of 1 to 3 years.  Probation is not recommended by

 5   the guideline provisions.  The fine, 20,000 to $200,000.

 6   $100 in special assessments.

 7       With regard to the departure -- and the departure

 8   motion is made under 5K2.0, 5K2.6, with reference to

 9   guideline 2A5.2(b)(1).  The Court finds that a 5-level

10   upward departure is appropriate to total offense level

11   30, criminal history IV, and that guideline range would

12   be 135 to 168 months.  There is a statutory maximum of

13   120 months, and so that would be the guideline sentence.

14       The Court has decided that a departure is

15   appropriate because the aggravating factors present in

16   this case were not taken into account in computing the

17   advisory guidelines, specifically, on December the 1st of

18   2015, Mr. Pete fired shots in the city limits of Dubuque

19   into an apartment that was occupied by one Robert Scott

20   and Vanessa Williams.  As the story goes, he and

21   Mr. Scott were feuding.  The -- I should say that the

22   shots ended up penetrating the building.  I don't know

23   where he was aiming because I wasn't there, but the shots

24   fired penetrated the outer structure of the building.  In

25   fact, one of the rounds lodged in the refrigerator inside

*Contact Patrice Murray at 319-286-2338 or patrice_murray@iand.uscourts.gov*
*to purchase a complete copy of the transcript.*

Case 2:16-cr-01011-CJW-MAR   Document 102   Filed 12/20/16   Page 19 of 37

1  the dwelling where Mr. Scott and Ms. Williams were

2  residing.  I don't have from the presentence report what

3  time of night or day this was, but the occupants, Robert

4  Scott and Vanessa Williams, were home at the time that

5  these rounds penetrated their home.  The shots fired were

6  not otherwise taken into account under the advisory

7  guidelines scoring.  This is a very aggravated situation;

8  but by the grace of God, no one was injured or killed.

9  Very, very dangerous, intentional conduct.  And so the

10 departure is appropriate, and the guideline sentence now

11 is 120 months.

12      I would say, just as an aside, that if the Court

13 erred in computing the advisory guidelines, the Court

14 would still impose the very same sentence after

15 consideration of the 3553(a) factors, and I can make a

16 better record on that at the end here.

17      So, Mr. Vavricek, the guideline sentence is

18 120 months.  Are you asking the Court to impose the

19 guideline sentence or to go below?

20          MR. VAVRICEK:  The government requests a

21 sentence within the advisory guidelines.  We believe that

22 with the departure, the conduct is adequately accounted

23 for at the top of the range, which would be consistent --

24 every case is different, of course.  The Court makes an

25 individualized determination, but consistent with the

*Contact Patrice Murray at 319-286-2338 or patrice_murray@iand.uscourts.gov*
*to purchase a complete copy of the transcript.*
Case 2:16-cr-01011-CJW-MAR  Document 102  Filed 12/20/16  Page 20 of 37

1  cases cited in our brief regarding when a prohibited

2  person has actually discharged a firearm, so, thank you.

3          THE COURT:  All right.  Mr. McKelvie.

4          MR. McKELVIE:  Thank you, Your Honor.  A couple

5  of things, Your Honor.  Mr. Pete acknowledges, and he has

6  acknowledged to me and others, that he realizes that the

7  life-style he's leading was very wrong, that there was --

8  is a dangerous situation, and he's going to try to do

9  everything he can to rectify the path that he was heading

10 and go in the right direction.  There's not too many

11 things a person can do to begin with, but one thing that

12 Mr. Pete has done while in the Linn County Jail is get

13 his GED.  This would have been submitted to the Court

14 sooner, but it was just handed to me.  He told me that he

15 got it, but it's dated October 27, 2016.  I've got it in

16 my hand, and with the Court's permission, a letter from

17 the person who administered that, basically saying that

18 he -- that she's pleased to report that he did complete

19 it, and that not only did he pass the 5 tests, but he

20 achieved the college and career readiness designation in

21 4 of the 5 subjects.

22     He plans to pursue training in a career that will

23 help him provide for himself and his family in the

24 future.  He has expressed his appreciation many times for

25 the opportunity provided by the Linn County Correctional

*Contact Patrice Murray at 319-286-2338 or patrice_murray@iand.uscourts.gov to purchase a complete copy of the transcript.*

Case 2:16-cr-01011-CJW-MAR  Document 102  Filed 12/20/16  Page 21 of 37

1    Center and Kirkwood Community College to get his diploma

2    while at the center.  So again, there's not much a person

3    can do except try to go forward, and to the extent that

4    he can, he's done that.

5        It's -- it's difficult to argue in a case like this

6    that a person should be given any kind of a break, when

7    weapons are involved and people are in danger, and so on,

8    but I just respectfully request the Court, look at the --

9    the enhancements that have been piled up here, and

10   consider, because the Court has discretion to do that,

11   even though I have not filed a motion for downward

12   variance.  I guess I was not confident, I guess, that the

13   Court would go up to the 120-month sentence, but

14   respectfully request that the Court impose the 84-month

15   sentence in this case.  Thank you, Your Honor.

16            THE COURT:  Mr. Pete, this is the time in the

17   proceeding when you have a chance to speak.  You don't

18   have to say anything unless you want to.

19            THE DEFENDANT:  I just want to apologize to the

20   Court and to my family for my conduct.  I realize I was

21   living a criminal life-style.  I've had time to think

22   about that, and I'm going to change for the better.  I've

23   thought about what I can do to get started with that, and

24   that was to go ahead and receive my GED, which I just

25   received at the Linn County Jail.  I intend to keep

*Contact Patrice Murray at 319-286-2338 or patrice_murray@iand.uscourts.gov*
*to purchase a complete copy of the transcript.*

Case 2:16-cr-01011-CJW-MAR   Document 102   Filed 12/20/16   Page 22 of 37

```
 1    improving myself and avoid any criminal conduct in the
 2    future, so I never have to leave my daughters and my
 3    family again.  Thank you for listening, Your Honor.
 4         THE COURT:  Thank you.  The Court then is ready
 5    to make its findings.  In arriving at a disposition, I
 6    have carefully considered each and every factor under 18
 7    United States Code Section 3553(a).  I have computed the
 8    advisory guidelines.  In spite of obstruction of justice,
 9    I did impose acceptance of responsibility at the maximum
10    level, and the government did not disagree with that
11    substantially.  It is a rare case where you can score
12    both of them under the advisory guidelines.
13         The nature and circumstances of the offense are
14    really not at issue, and so the Court won't spend a lot
15    of time on them.  Of concern here is early on, the
16    defendant attempted to get two females to provide false
17    testimony before the grand jury, and that was the basis
18    of the obstruction of justice.  The criminal justice
19    system depends on people, like these two women who were
20    approached to lie, not lying and telling the truth,
21    otherwise the whole system breaks down, and they are to
22    be commended for being able to withstand the pressure and
23    not come forward and lie.
24         Mr. Pete is 24.  Probation says he's engaged to be
25    married.  He has two children.  His upbringing is
```

*Contact Patrice Murray at 319-286-2338 or patrice_murray@iand.uscourts.gov*
*to purchase a complete copy of the transcript.*

Case 2:16-cr-01011-CJW-MAR   Document 102   Filed 12/20/16   Page 23 of 37

1  detailed in the presentence investigation report.

2  Although he did not live with a full family and his

3  father was not in the picture, he did have a positive

4  relationship with his mom.  Sadly, when I read Mr. Pete's

5  background, it sounds like he was a high school athlete

6  that was doing quite well, but when he dropped out of

7  school, it seems to me that things really went downhill.

8  Didn't like school, dropped out, and after that, not

9  positive results.

10     Minimal employment history.  He's a confirmed member

11  of the Gangster Disciples street gang.  He has a serious

12  alcohol problem.  He does admit his alcohol problem, and

13  apparently his fiancée has reinforced with him that this

14  is something that has to be changed.  He also has a

15  marijuana issue.  He did try substance abuse treatment.

16  That ended unsuccessfully.  That is of concern.  The

17  Court is hopeful that with additional encouragement and

18  attempts, that Mr. Pete will take advantage of the

19  assistance that is available to him to give up his

20  substance problems.

21     The criminal history is also concerning,

22  particularly, operating while intoxicated.  And the

23  Court, obviously, is concerned about that because of the

24  risk to public safety, just like I -- I'm very concerned

25  about his criminal conduct in Dubuque, shooting in that

*Contact Patrice Murray at 319-286-2338 or patrice_murray@iand.uscourts.gov*
*to purchase a complete copy of the transcript.*
Case 2:16-cr-01011-CJW-MAR   Document 102   Filed 12/20/16   Page 24 of 37

1 residential neighborhood and having the shots lodged in
2 Mr. Scott's and Ms. Williams' home. He has prior poor
3 performance on supervision.

4     The Court is aware that the sentence I impose today
5 has to reflect the seriousness of the offense -- this is
6 clearly a very serious crime -- promote respect for the
7 law, be a just punishment, be a deterrent in general to
8 criminal conduct and to the defendant, and protect the
9 public from further crimes of the defendant. The
10 sentence has to provide the defendant with needed
11 education, vocational training, medical care, or other
12 correctional treatment in the most effective manner.

13     And, of course, the sentence I impose has to avoid
14 unwarranted sentence disparities among defendants with
15 similar records found guilty of similar conduct. In that
16 connection, I studied this case along with that of
17 Nathanson-Love and Shaw to make sure that, as I was going
18 through these, I was being fair and not creating any
19 unwarranted disparities. And, of course, the advisory
20 guidelines are of great assistance to courts in trying to
21 avoid that pitfall of sentencing. I considered here
22 whether a sentence below the guideline of 120 months
23 would be appropriate. I weighed the mitigating factors.
24 I weighed the aggravating factors. I considered the
25 arguments made by the lawyers and the statements made by

*Contact Patrice Murray at 319-286-2338 or patrice_murray@iand.uscourts.gov*
*to purchase a complete copy of the transcript.*
Case 2:16-cr-01011-CJW-MAR  Document 102  Filed 12/20/16  Page 25 of 37

1    Mr. Pete, and I find no basis to vary downward from the

2    advisory guideline range.  I'm very hopeful that Mr. Pete

3    will use this opportunity to make the changes that he

4    says he wants to make.

5         So it is the judgment of the Court that Camron

6    Andrew Pete, Jr., is hereby committed to the custody of

7    the Bureau of Prisons to serve 120 months.  There is a

8    pending case in Dubuque, and I order that the term of

9    imprisonment for this offense be ordered to run

10   concurrently with any term of imprisonment that may be

11   imposed in the future in the Iowa District Court for

12   Dubuque County, Case FECR117729, consistent with

13   guideline 5G1.3(c).  The under -- or the state case is

14   basically based on the same facts.

15        In terms of recommendations to the Bureau of

16   Prisons, I recommend that Mr. Pete be designated to a

17   Bureau of Prisons' facility in close proximity to his

18   family, commensurate with his security and custody

19   classification needs.  I recommend that he participate in

20   the Bureau of Prisons' 500-hour Comprehensive Residential

21   Drug Abuse Treatment Program or an alternate substance

22   abuse treatment program.  He has some other Dubuque

23   County cases that aren't connected.  Pursuant to 18

24   United States Code Section 3584, I recommend the sentence

25   for this offense be ordered to run consecutively or back

*Contact Patrice Murray at 319-286-2338 or patrice_murray@iand.uscourts.gov*
*to purchase a complete copy of the transcript.*

Case 2:16-cr-01011-CJW-MAR   Document 102   Filed 12/20/16   Page 26 of 37

to back with any term of imprisonment that may be imposed in the Iowa District Court for Dubuque County, cases SMCR117745, SMCR117744, SMCR116778, and SMCR116777.

Mr. Pete, when you get out of prison, you'll be on supervised release for 3 years. Within 72 hours of release from custody of the Bureau of Prisons, you must report in person to the Probation Office in the district to which you are released. While you are on supervised release, you must comply with the standard conditions of supervision set out in the judgment order.

In addition, you must not commit any federal, state, or local crimes. You must not illegally possess a controlled substance. You must not possess a firearm, ammunition, a destructive device or any dangerous weapon. You must cooperate in the collection of a DNA sample.

Just a reminder, you are now a convicted felon. One of the things that means is it's against the law, federal and state, for you to possess for any reason a firearm or ammunition. Frankly, with this in your background, if you are in possession of a firearm or ammunition in the future, prosecuted, convicted, come up for sentencing, you will receive a very substantial sentence. So the best thing for you to do is to have nothing whatsoever to do with firearms or ammunition.

While you are on supervised release, you must comply

*Contact Patrice Murray at 319-286-2338 or patrice_murray@iand.uscourts.gov to purchase a complete copy of the transcript.*

Case 2:16-cr-01011-CJW-MAR Document 102 Filed 12/20/16 Page 27 of 37

1  with all of the special conditions set forth in the

2  special conditions of supervision section of the

3  presentence report, Paragraphs 84 through 90.  Those

4  weren't objected to, and they are incorporated by this

5  reference.  They're ordered by the Court, and they will

6  be implemented by Probation.

7      No fine is imposed.  I order that you pay a $100

8  special assessment.

9      You are immediately remanded to the custody of the

10  United States Marshal.  There are no counts to be

11  dismissed.

12      Mr. Pete, I'm now going to talk to you about your

13  rights to appeal.  If you disagree with this judgment and

14  commitment, you have a right to appeal.  Your appeal

15  would go to the Eighth Circuit Court of Appeals.  Here's

16  how you appeal.  You have to file a written notice of

17  appeal with the Clerk of Court here in the United States

18  District Court for the Northern District of Iowa at

19  Cedar Rapids, Iowa.  If you do not file a written notice

20  of appeal within the next 14 days, you forever give up

21  your right to challenge this judgment and sentence.  If

22  you would like to appeal and you cannot afford the

23  services of an attorney, the Court will appoint an

24  attorney to represent you on appeal.

25      I will receipt back the Exhibit 1 to Dubuque or to

*Contact Patrice Murray at 319-286-2338 or patrice_murray@iand.uscourts.gov*
*to purchase a complete copy of the transcript.*

Case 2:16-cr-01011-CJW-MAR  Document 102  Filed 12/20/16  Page 28 of 37

```
 1   the US Attorney.

 2        Anything else, Mr. Vavricek?

 3            MR. VAVRICEK:  No, Your Honor.

 4            THE COURT:  Anything else, Mr. McKelvie?

 5            MR. McKELVIE:  No, Your Honor.

 6            THE COURT:  Mr. Pete, did you understand

 7   everything I talked about?

 8            THE DEFENDANT:  Yeah.

 9            THE COURT:  Good luck to you.  This concludes

10   the hearing.

11        (Proceedings concluded at 2:12 p.m.)

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Case 2:16-cr-01011-CJW-MAR  Document 102  Filed 12/20/16  Page 29 of 37

```
1                  C E R T I F I C A T E

2          I, Patrice A. Murray, a Certified Shorthand
   Reporter of the State of Iowa, do hereby certify that at
3  the time and place heretofore indicated, a hearing was
   held before the Honorable Linda R. Reade; that I reported
4  in shorthand the proceedings of said hearing, reduced the
   same to print to the best of my ability by means of
5  computer-assisted transcription under my direction and
   supervision, and that the foregoing transcript is a true
6  record of all proceedings had on the taking of said
   hearing at the above time and place.
7
           I further certify that I am not related to or
8  employed by any of the parties to this action, and
   further, that I am not a relative or employee of any
9  attorney or counsel employed by the parties hereto or
   financially interested in the action.
10
       IN WITNESS WHEREOF, I have set my hand this 20th day
11 of December, 2016.

12
               /s/ Patrice A. Murray
13             Patrice A. Murray, CSR, RPR, RMR, FCRR
               United States District Court, NDIA
14             111 Seventh Avenue S.E., Box 4
               Cedar Rapids, Iowa 52401-2101
15

16

17

18

19

20

21

22

23

24

25
```

*Contact Patrice Murray at 319-286-2338 or patrice_murray@iand.uscourts.gov*
*to purchase a complete copy of the transcript.*

Case 2:16-cr-01011-CJW-MAR Document 102 Filed 12/20/16 Page 30 of 37

## $

**$100** [3] - 4:6, 19:6, 28:7
**$200,000** [1] - 19:5
**$250,000** [1] - 3:22

## /

**/s** [1] - 30:12

## 1

**1** [9] - 1:10, 2:6, 3:20, 9:19, 10:25, 11:3, 14:15, 19:4, 28:25
**10** [1] - 3:18
**105** [1] - 19:3
**11** [3] - 2:6, 2:7, 2:8
**111** [4] - 1:10, 1:17, 1:24, 30:14
**12/1/16** [1] - 1:21
**12/20/16** [1] - 1:21
**120** [5] - 19:13, 20:11, 20:18, 25:22, 26:7
**120-month** [2] - 16:23, 22:13
**135** [1] - 19:12
**14** [2] - 4:19, 28:20
**16-1011** [2] - 1:5, 3:2
**16-round** [1] - 12:12
**168** [1] - 19:12
**18** [2] - 23:6, 26:23
**1:28** [1] - 1:18
**1st** [1] - 19:17

## 2

**2** [8] - 2:7, 9:19, 10:22, 11:3, 12:14, 15:12, 15:13, 17:17
**2-level** [1] - 18:20
**2-point** [1] - 17:7
**20** [2] - 8:23, 15:6
**20,000** [1] - 19:5
**20-level** [1] - 7:21
**2004** [1] - 7:11
**2015** [1] - 19:18
**2016** [5] - 1:17, 3:13, 4:19, 21:15, 30:11
**20th** [1] - 30:10
**213** [1] - 1:12
**22** [4] - 7:4, 8:4, 8:24, 13:13
**24** [1] - 23:24
**25** [2] - 3:12, 18:25
**27** [1] - 21:15
**28** [1] - 15:14
**286-2338** [1] - 1:25
**2:12** [1] - 29:11
**2A5.2(b)(1)** [1] - 19:9
**2nd** [1] - 1:17

## 3

**3** [9] - 2:8, 3:19, 4:25, 9:23, 10:20, 11:3, 15:12, 19:4, 27:5
**30** [1] - 19:11
**319** [1] - 1:25
**3553(a** [1] - 20:15
**3553(a)** [1] - 23:7
**3584** [1] - 26:24

## 4

**4** [5] - 1:24, 7:4, 15:13, 21:21, 30:14
**4-level** [1] - 13:13
**4-point** [1] - 6:5
**449** [1] - 7:10

## 5

**5** [4] - 3:13, 3:21, 21:19, 21:21
**5-level** [1] - 19:9
**500-hour** [1] - 26:20
**50112** [1] - 1:13
**52401** [1] - 1:11
**52401-2101** [2] - 1:24, 30:14
**5G1.3(c)** [1] - 26:13
**5K2.0** [1] - 19:8
**5K2.6** [2] - 16:7, 19:8

## 6

**6-level** [2] - 6:3, 13:10
**63** [1] - 4:18

## 7

**7** [1] - 15:12
**708.8** [2] - 7:9, 13:19
**72** [1] - 27:5
**724.4** [2] - 7:8, 14:8
**771** [1] - 7:10

## 8

**810** [1] - 1:12
**84** [2] - 19:3, 28:3
**84-month** [1] - 22:14

## 9

**9** [3] - 2:6, 2:7, 2:8
**90** [1] - 28:3

## A

**ability** [1] - 30:4
**able** [7] - 5:3, 7:2, 9:11, 10:8, 12:3, 12:24, 23:22
**absence** [1] - 5:5
**Abuse** [1] - 26:21
**abuse** [2] - 24:15, 26:22
**accept** [1] - 9:5
**acceptance** [10] - 15:15, 15:21, 15:24, 16:16, 17:4, 18:9, 18:14, 18:17, 18:20, 23:9
**accepting** [4] - 7:22, 11:18, 17:15, 17:18
**according** [1] - 12:13
**account** [2] - 19:16, 20:6
**accounted** [1] - 20:22
**achieved** [1] - 21:20
**acknowledged** [1] - 21:6
**acknowledges** [1] - 21:5
**action** [2] - 30:8, 30:9
**added** [1] - 9:22
**adding** [2] - 6:7, 18:1
**addition** [2] - 7:14, 27:11
**additional** [2] - 9:23, 18:17, 24:17
**address** [1] - 5:23
**adequately** [1] - 20:22
**adjusted** [1] - 15:14
**adjustments** [1] - 19:2
**administered** [1] - 21:17
**admit** [2] - 9:19, 24:12
**admitted** [2] - 17:8, 18:16
**admitting** [1] - 17:14
**ado** [1] - 11:4
**advantage** [1] - 24:18
**advisory** [9] - 5:16, 19:17, 20:6, 20:13, 20:21, 23:8, 23:12, 25:19, 26:2
**affects** [1] - 6:14
**affirmed** [1] - 16:22
**afford** [2] - 17:11, 28:22
**Agent** [2] - 5:1, 10:8
**agent** [1] - 12:2
**aggravated** [2] - 14:22, 20:7
**aggravating** [2] - 19:15, 25:24
**agreed** [1] - 5:4
**ahead** [2] - 10:19, 22:24
**aiming** [1] - 19:23
**alcohol** [1] - 24:12
**alternate** [1] - 26:21
**alternatively** [1] - 13:18
**amended** [2] - 9:19, 12:14
**amendment** [1] - 9:21
**America** [1] - 3:3
**AMERICA** [1] - 1:3
**ammunition** [5] - 7:5, 27:14, 27:19, 27:20, 27:24

## A (right column)

**Andrew** [2] - 3:3, 26:6
**apartment** [1] - 19:19
**apologize** [2] - 14:10, 22:19
**appeal** [8] - 28:13, 28:14, 28:16, 28:17, 28:20, 28:22, 28:24
**Appeals** [1] - 28:15
**APPEARANCES** [1] - 1:9
**appearances** [1] - 3:6
**appeared** [3] - 1:11, 1:13, 4:9
**applies** [3] - 12:9, 12:16, 14:8
**appoint** [1] - 28:23
**appreciate** [1] - 9:11
**appreciation** [1] - 21:24
**approach** [1] - 9:15
**approached** [2] - 9:17, 23:20
**appropriate** [10] - 4:22, 7:21, 9:2, 15:6, 15:8, 16:20, 19:10, 19:15, 20:10, 25:23
**April** [1] - 3:12
**area** [1] - 16:13
**argue** [2] - 16:8, 22:5
**arguing** [2] - 6:10, 7:20
**argument** [6] - 6:13, 6:15, 9:5, 10:12, 11:12, 12:6
**arguments** [2] - 8:3, 25:25
**armed** [7] - 7:8, 7:16, 13:16, 13:17, 13:23, 14:17, 14:19
**arriving** [1] - 23:5
**articulated** [1] - 15:7
**aside** [1] - 20:12
**aspect** [1] - 14:8
**aspects** [1] - 17:25
**assessment** [2] - 4:6, 28:8
**assessments** [1] - 19:6
**assist** [1] - 5:2
**assistance** [2] - 24:19, 25:20
**Assistant** [1] - 1:10
**assisted** [1] - 30:5
**assume** [1] - 12:22
**assuming** [1] - 14:23
**ATF** [1] - 5:2
**athlete** [1] - 24:5
**attempted** [1] - 23:16
**attempts** [1] - 24:18
**attention** [1] - 11:14
**ATTORNEY** [1] - 1:10
**Attorney** [2] - 1:10, 29:1
**attorney** [5] - 1:12, 4:7, 28:23, 28:24, 30:9
**attorneys** [1] - 4:21
**available** [1] - 24:19
**Avenue** [5] - 1:10, 1:12, 1:17, 1:24, 30:14
**avoid** [4] - 13:25, 23:1, 25:13, 25:21
**aware** [1] - 25:4

*Contact Patrice Murray at 319-286-2338 or patrice_murray@iand.uscourts.gov*
*to purchase a complete copy of the transcript.*

Case 2:16-cr-01011-CJW-MAR   Document 102   Filed 12/20/16   Page 31 of 37

## B

**background** [2] - 24:5, 27:19
**base** [8] - 7:20, 7:21, 8:23, 9:4, 15:5, 15:6, 15:8, 17:23
**based** [3] - 4:23, 6:20, 26:14
**basis** [2] - 23:17, 26:1
**BEFORE** [1] - 1:16
**begin** [1] - 21:11
**behalf** [2] - 1:11, 1:13
**below** [2] - 20:19, 25:22
**bench** [1] - 9:17
**benefit** [1] - 17:11
**best** [2] - 27:23, 30:4
**better** [2] - 20:16, 22:22
**between** [1] - 15:12
**binding** [1] - 7:11
**blue** [1] - 10:9
**Box** [4] - 1:10, 1:12, 1:24, 30:14
**box** [1] - 10:17
**break** [1] - 22:6
**breaks** [1] - 23:21
**brief** [4] - 6:2, 11:15, 16:6, 21:1
**briefed** [1] - 11:13
**building** [2] - 19:22, 19:24
**burden** [2] - 8:22, 17:13
**Bureau** [5] - 26:7, 26:15, 26:17, 26:20, 27:6

## C

**called** [1] - 5:2
**CAMRON** [1] - 1:6
**Camron** [2] - 3:3, 26:5
**cannot** [1] - 28:22
**capable** [2] - 7:22, 11:18
**capacity** [6] - 7:23, 12:12, 12:23, 13:9, 15:9, 16:12
**capture** [1] - 16:25
**car** [1] - 14:4
**care** [1] - 25:11
**career** [2] - 21:20, 21:22
**carefully** [1] - 23:6
**carried** [1] - 15:2
**carries** [1] - 14:21
**carrying** [6] - 7:7, 7:12, 13:16, 14:3, 14:24, 15:13
**case** [7] - 5:10, 6:21, 6:25, 7:9, 7:17, 9:3, 10:11, 10:13, 11:19, 11:20, 11:22, 12:7, 14:6, 15:22, 16:2, 16:9, 16:11, 16:21, 17:8, 19:16, 20:24, 22:5, 22:15, 23:11, 25:16, 26:8, 26:13
**Case** [1] - 26:12
**cases** [4] - 13:5, 21:1, 26:23, 27:2
**category** [1] - 18:25

**Cedar** [5] - 1:10, 1:18, 1:24, 28:19, 30:14
**Center** [1] - 22:1
**center** [1] - 22:2
**certain** [1] - 5:23
**certainly** [4] - 11:25, 12:1, 12:7, 12:21
**Certified** [2] - 1:19, 30:2
**certify** [2] - 30:2, 30:7
**challenge** [1] - 28:21
**challenged** [1] - 18:15
**chance** [2] - 4:25, 22:17
**change** [2] - 8:3, 22:22
**changed** [1] - 24:14
**changes** [1] - 26:3
**charge** [3] - 6:6, 6:11, 17:18
**charging** [1] - 3:14
**child** [1] - 3:25
**children** [1] - 23:25
**Circuit** [6] - 7:9, 7:11, 11:21, 13:15, 13:22, 28:15
**circumstances** [3] - 15:23, 16:2, 23:13
**cited** [3] - 7:6, 13:5, 21:1
**city** [3] - 14:18, 14:19, 19:18
**classification** [1] - 26:19
**clearly** [6] - 11:17, 12:9, 12:16, 14:1, 15:8, 25:6
**Clerk** [1] - 28:17
**CLERK** [1] - 3:2
**close** [2] - 16:16, 26:17
**Code** [6] - 7:7, 7:8, 13:19, 14:11, 23:7, 26:24
**collection** [1] - 27:15
**college** [1] - 21:20
**College** [1] - 22:1
**commencing** [1] - 1:18
**commended** [1] - 23:22
**commensurate** [1] - 26:18
**commentary** [1] - 9:23
**commit** [1] - 27:11
**commitment** [1] - 28:14
**commits** [1] - 14:22
**committed** [1] - 26:6
**Community** [1] - 22:1
**complete** [1] - 21:18
**Completed** [1] - 1:21
**comply** [2] - 27:9, 27:25
**Comprehensive** [1] - 26:20
**computed** [1] - 23:7
**computer** [1] - 30:5
**computer-assisted** [1] - 30:5
**computing** [2] - 19:16, 20:13
**concealed** [2] - 14:17, 14:20
**concern** [2] - 23:15, 24:16
**concerned** [2] - 24:23, 24:24
**concerning** [2] - 5:10, 24:21
**concerns** [1] - 14:1
**concluded** [1] - 29:11
**concludes** [1] - 29:9

**concurrently** [1] - 26:10
**conditions** [3] - 27:9, 28:1, 28:2
**conduct** [9] - 6:6, 18:16, 20:9, 20:22, 22:20, 23:1, 24:25, 25:8, 25:15
**confident** [1] - 22:12
**confirmed** [1] - 24:10
**connected** [1] - 26:23
**connection** [3] - 7:5, 8:24, 25:16
**consecutively** [1] - 26:25
**consider** [1] - 22:10
**consideration** [1] - 20:15
**considered** [3] - 23:6, 25:21, 25:24
**consistent** [3] - 20:23, 20:25, 26:12
**controlled** [1] - 27:13
**conversation** [1] - 16:3
**convicted** [2] - 27:16, 27:21
**cooperate** [1] - 27:15
**cooperation** [2] - 17:12, 18:7
**copy** [3] - 5:22, 5:25, 8:12
**correct** [8] - 3:23, 4:2, 7:25, 8:1, 10:7, 10:23, 10:24, 14:25
**Correctional** [1] - 21:25
**correctional** [1] - 25:12
**correctly** [1] - 15:12
**Counsel** [1] - 3:6
**counsel** [1] - 30:9
**Count** [1] - 3:13
**counting** [1] - 14:1
**counts** [1] - 28:10
**County** [8] - 5:21, 5:25, 21:12, 21:25, 22:25, 26:12, 26:23, 27:2
**couple** [3] - 17:3, 17:5, 21:4
**course** [3] - 20:24, 25:13, 25:19
**COURT** [45] - 1:1, 3:11, 3:17, 4:5, 4:11, 4:15, 4:17, 5:8, 5:14, 5:18, 6:17, 7:3, 7:14, 8:2, 8:9, 8:12, 8:15, 8:21, 9:16, 10:1, 10:14, 10:19, 10:22, 10:25, 11:6, 11:8, 11:11, 12:17, 13:12, 14:7, 14:12, 14:15, 15:1, 17:2, 17:20, 18:9, 18:11, 18:19, 18:24, 21:3, 22:16, 23:4, 29:4, 29:6, 29:9
**Court** [44] - 1:23, 4:17, 4:20, 5:9, 6:1, 6:19, 6:23, 7:1, 7:11, 13:8, 15:5, 15:22, 16:14, 16:17, 16:22, 18:5, 18:17, 18:20, 19:9, 19:14, 20:12, 20:13, 20:18, 20:24, 21:13, 22:8, 22:10, 22:13, 22:14, 22:20, 23:4, 23:14, 24:17, 24:23, 25:4, 26:5, 26:11, 27:2, 28:5, 28:15, 28:17, 28:18, 28:23, 30:13

**court** [5] - 3:1, 3:12, 4:9, 4:11, 5:9
**Court's** [3] - 6:25, 18:2, 21:16
**courtesies** [1] - 9:9
**courts** [2] - 17:14, 25:20
**CR** [1] - 1:5
**created** [1] - 17:7
**creating** [2] - 6:22, 25:18
**crime** [3] - 6:14, 16:18, 25:6
**crimes** [2] - 25:9, 27:12
**criminal** [8] - 18:25, 19:11, 22:21, 23:1, 23:18, 24:21, 24:25, 25:8
**Criminal** [1] - 3:2
**CSR** [2] - 1:23, 30:13
**custody** [4] - 26:6, 26:18, 27:6, 28:9

## D

**danger** [2] - 16:13, 22:7
**dangerous** [4] - 14:17, 20:9, 21:8, 27:14
**dated** [2] - 4:18, 21:15
**daughters** [1] - 23:2
**Davis** [4] - 9:2, 10:11, 11:18, 13:4
**days** [1] - 28:20
**DCI** [1] - 2:7
**December** [2] - 19:17, 30:11
**decided** [1] - 19:14
**decision** [2] - 6:25, 7:2
**decision-making** [1] - 6:25
**Defendant** [2] - 1:7, 1:13
**defendant** [12] - 3:10, 7:20, 11:19, 12:6, 13:10, 16:11, 16:17, 16:23, 23:16, 25:8, 25:9, 25:10
**DEFENDANT** [10] - 3:16, 4:10, 4:14, 4:16, 8:8, 8:11, 8:14, 8:20, 22:19, 29:8
**defendants** [1] - 25:14
**degree** [1] - 17:10
**Dennis** [1] - 3:9
**DENNIS** [1] - 1:12
**depart** [1] - 13:24
**departure** [15] - 9:1, 15:18, 15:20, 15:22, 16:8, 17:7, 17:22, 18:6, 19:7, 19:10, 19:14, 20:10, 20:22
**departures** [1] - 19:2
**depends** [2] - 16:1, 23:19
**Des** [1] - 5:3
**designated** [1] - 26:16
**designation** [1] - 21:20
**destructive** [1] - 27:14
**detailed** [1] - 24:1
**determination** [1] - 20:25
**deterrent** [1] - 25:7
**device** [1] - 27:14

*Contact Patrice Murray at 319-286-2338 or patrice_murray@iand.uscourts.gov*
*to purchase a complete copy of the transcript.*

Case 2:16-cr-01011-CJW-MAR   Document 102   Filed 12/20/16   Page 32 of 37

**dicta** [1] - 11:20
**difference** [1] - 9:20
**different** [4] - 16:9, 17:16, 17:25, 20:24
**differently** [1] - 11:21
**difficult** [1] - 22:5
**diploma** [1] - 22:1
**direction** [2] - 21:10, 30:5
**directly** [1] - 7:17
**disagree** [2] - 23:10, 28:13
**discharged** [3] - 16:21, 16:24, 21:2
**Disciples** [1] - 24:11
**discretion** [1] - 22:10
**discussed** [1] - 6:22
**disk** [2] - 4:24, 5:4
**dismissed** [1] - 28:11
**disparities** [2] - 25:14, 25:19
**disposition** [1] - 23:5
**DISTRICT** [2] - 1:1, 1:1
**district** [1] - 27:7
**District** [6] - 1:23, 26:11, 27:2, 28:18, 30:13
**Disturbance** [1] - 3:24
**DNA** [1] - 27:15
**Document** [1] - 4:18
**documents** [1] - 4:19
**done** [3] - 17:14, 21:12, 22:4
**double** [1] - 14:1
**double-counting-type** [1] - 14:1
**down** [2] - 19:3, 23:21
**downhill** [1] - 24:7
**downward** [2] - 19:2, 22:11, 26:1
**DPS** [1] - 9:22
**draft** [1] - 5:20
**draw** [1] - 11:14
**dropped** [2] - 24:6, 24:8
**drug** [1] - 7:24
**Drug** [1] - 26:21
**Dubuque** [8] - 11:2, 19:18, 24:25, 26:8, 26:12, 26:22, 27:2, 28:25
  **duration** [1] - 3:21
  **dwelling** [1] - 20:1

### E

**e-mail** [2] - 4:23, 9:22
**early** [1] - 23:15
**easier** [1] - 12:7
**easily** [1] - 12:3
**easy** [1] - 10:9
**easy-to-see** [1] - 10:9
**education** [3] - 8:16, 8:17, 25:11
  **effective** [1] - 25:12
  **Eighth** [6] - 7:9, 7:10, 11:21, 13:14, 13:22, 28:15
  **elements** [3] - 7:16, 13:17,

15:2
**employed** [2] - 30:8, 30:9
**employee** [1] - 30:8
**employment** [1] - 24:10
**encouragement** [1] - 24:17
**end** [1] - 20:16
**ended** [3] - 19:22, 24:16
**engaged** [1] - 23:24
**enhancement** [2] - 6:3, 12:16
**enhancements** [1] - 22:9
**erred** [1] - 20:13
**essentially** [1] - 6:6
**EVAN** [1] - 1:12
**evidence** [6] - 9:5, 11:6, 11:7, 11:9, 14:9, 15:1
**examiner** [1] - 9:22
**example** [1] - 12:2
**Except** [1] - 14:16
**except** [2] - 15:23, 22:3
**exceptions** [1] - 15:25
**Exhibit** [12] - 2:6, 2:7, 2:8, 4:25, 9:19, 9:23, 10:20, 10:22, 10:25, 12:14, 28:25
**exhibits** [4] - 4:21, 4:22, 7:1, 9:13
**Exhibits** [1] - 11:3
**EXHIBITS** [1] - 2:4
**explicitly** [1] - 16:19
**expressed** [1] - 21:24
**extended** [3] - 6:3, 10:2, 16:12
**extended-capacity** [1] - 16:12
**extent** [3] - 13:9, 16:15, 22:3
**extreme** [1] - 11:22
**eyes** [1] - 8:18

### F

**F.3d** [1] - 7:10
**facility** [1] - 26:17
**fact** [2] - 13:7, 19:25
**factor** [1] - 23:6
**factors** [4] - 19:15, 20:15, 25:23, 25:24
**facts** [7] - 6:21, 9:10, 16:1, 17:6, 17:8, 18:15, 26:14
**factual** [1] - 12:21
**factually** [1] - 6:25
**fair** [2] - 6:8, 25:18
**fairly** [3] - 8:3, 12:3, 12:19
**false** [1] - 23:16
**family** [5] - 21:23, 22:20, 23:3, 24:2, 26:18
**far** [3] - 7:16, 16:11, 17:4
**father** [1] - 24:3
**FCRR** [2] - 1:23, 30:13
**FECR117729** [1] - 26:12
**federal** [4] - 6:6, 6:11, 27:11, 27:17

**felon** [2] - 6:12, 27:16
**felonies** [1] - 7:7
**felony** [2] - 7:5, 8:25
**females** [1] - 23:16
**feuding** [1] - 19:21
**fiancée** [1] - 24:13
**Fifth** [1] - 1:12
**file** [2] - 28:16, 28:19
**filed** [3] - 4:19, 9:20, 22:11
**final** [1] - 5:24
**financially** [1] - 30:9
**find** [3] - 6:23, 13:8, 26:1
**finding** [1] - 6:20
**findings** [1] - 23:5
**finds** [2] - 15:5, 19:9
**fine** [3] - 3:21, 19:5, 28:7
**finger** [1] - 10:10
**fire** [3] - 10:10, 12:24, 15:10
**firearm** [23] - 3:15, 6:12, 7:5, 7:22, 9:13, 11:17, 11:23, 12:14, 13:6, 14:2, 14:20, 15:10, 15:11, 16:11, 16:12, 16:21, 16:24, 17:24, 18:2, 21:2, 27:13, 27:18, 27:20
**firearms** [2] - 15:12, 27:24
**fired** [6] - 10:6, 13:2, 16:12, 19:18, 19:24, 20:5
**fires** [1] - 11:25
**firing** [3] - 14:4, 15:18, 18:4
**first** [6] - 9:13, 10:3, 10:10, 11:19, 17:4, 17:6
**fit** [2] - 10:18, 12:14
**followed** [2] - 3:18, 19:3
**following** [1] - 3:1
**FOR** [1] - 1:1
**foregoing** [1] - 30:5
**foremost** [1] - 11:20
**forever** [1] - 28:20
**formal** [1] - 8:17
**forth** [1] - 28:1
**forward** [4] - 10:11, 12:4, 22:3, 23:23
  **frankly** [1] - 27:19
  **front** [1] - 14:11
  **full** [1] - 24:2
  **future** [4] - 21:24, 23:2, 26:11, 27:21

### G

**gallery** [1] - 3:24
**gang** [1] - 24:11
**Gangster** [1] - 24:11
**GED** [3] - 8:16, 21:13, 22:24
**general** [1] - 25:7
**generally** [1] - 15:16
**get** [9] - 9:11, 10:12, 15:24, 21:12, 22:1, 22:23, 23:16, 27:4
**gist** [1] - 10:2
**give** [2] - 24:19, 28:20

**given** [2] - 18:7, 22:6
**gives** [1] - 15:14
**gloves** [1] - 10:9
**God** [1] - 20:8
**governed** [1] - 13:22
**Government** [1] - 4:25
**government** [11] - 3:23, 4:2, 8:22, 8:25, 13:18, 14:7, 16:6, 17:13, 18:21, 20:20, 23:10
**government's** [2] - 5:15, 17:22
  **grace** [1] - 20:8
  **grand** [1] - 23:17
  **grant** [1] - 18:20
  **granted** [3] - 3:20, 18:3, 18:7
  **grants** [1] - 18:3
  **great** [2] - 16:13, 25:20
  **greater** [1] - 12:1
  **Grinnell** [1] - 1:12
  **guess** [4] - 13:7, 17:5, 22:12
  **guideline** [18] - 5:16, 11:13, 11:17, 12:9, 12:13, 16:15, 18:13, 19:1, 19:5, 19:9, 19:11, 19:13, 20:10, 20:17, 20:19, 25:22, 26:2, 26:13
  **guidelines** [6] - 6:8, 16:19, 16:25, 17:25, 19:17, 20:7, 20:13, 20:21, 23:8, 23:12, 25:20
  **guilty** [6] - 3:13, 4:9, 4:13, 4:15, 18:15, 25:15
  **gun** [1] - 10:17

### H

**hand** [2] - 21:16, 30:10
**handed** [1] - 21:14
**Handgun** [1] - 2:6
**happened** [1] - 17:1
**happening** [1] - 12:22
**happy** [1] - 9:24
**harms** [1] - 14:2
**heading** [1] - 21:9
**HEARING** [1] - 1:15
**hearing** [7] - 3:4, 4:23, 11:2, 29:10, 30:3, 30:4, 30:6
**HELD** [1] - 1:16
**held** [3] - 3:1, 12:24, 30:3
**help** [1] - 21:23
**hereby** [2] - 26:6, 30:2
**hereto** [1] - 30:9
**heretofore** [1] - 30:3
**high** [3] - 8:15, 12:12, 24:5
**high-capacity** [1] - 12:12
**himself** [1] - 21:23
**history** [4] - 18:25, 19:11, 24:10, 24:21
**home** [3] - 20:4, 20:5, 25:2
**HON** [1] - 1:16
**Honor** [40] - 3:16, 4:10, 4:14, 4:16, 5:7, 5:13, 5:17, 5:20,

6:9, 6:16, 6:18, 7:13, 8:8, 8:11, 8:14, 8:20, 9:7, 9:12, 9:24, 9:25, 10:16, 10:21, 11:7, 11:10, 11:15, 12:18, 13:21, 13:24, 16:5, 17:3, 17:15, 17:19, 18:8, 18:10, 21:4, 21:5, 22:15, 23:3, 29:3, 29:5
**Honor's** [1] - 9:12
**Honorable** [1] - 30:3
**hope** [1] - 10:8
**hopeful** [2] - 24:17, 26:2
**hours** [1] - 27:5
**Hunt** [2] - 5:1, 10:8

**I**

**identified** [2] - 16:7, 17:6
**illegally** [1] - 27:12
**imagines** [1] - 11:20
**immediately** [1] - 28:9
**impact** [1] - 4:4
**impediment** [1] - 6:24
**implemented** [1] - 28:6
**impose** [6] - 20:14, 20:18, 22:14, 23:9, 25:4, 25:13
**imposed** [3] - 26:11, 27:1, 28:7
**imprisonment** [4] - 19:1, 26:9, 26:10, 27:1
**improving** [1] - 23:1
**IN** [2] - 1:1, 30:10
**inclined** [1] - 13:24
**incorporated** [1] - 28:4
**increase** [5] - 6:5, 6:7, 13:10, 13:13, 16:20
**independent** [1] - 5:10
**INDEX** [1] - 2:1
**indicate** [2] - 13:1, 14:13
**indicated** [2] - 16:6, 30:3
**indictment** [1] - 3:14
**individualized** [1] - 20:25
**individuals** [1] - 16:13
**information** [1] - 5:10
**injured** [1] - 20:8
**inoperable** [5] - 11:23, 11:24, 13:6, 13:9, 15:11
**inserting** [1] - 11:22
**inside** [1] - 19:25
**insofar** [1] - 6:19
**instead** [1] - 6:12
**intend** [2] - 13:21, 22:25
**intent** [4] - 7:8, 7:16, 13:17, 13:23
**intention** [1] - 6:21
**intentional** [1] - 20:9
**interested** [1] - 30:9
**interesting** [1] - 12:19
**intoxicated** [1] - 24:22
**investigation** [6] - 4:18, 5:2, 5:12, 5:19, 8:7, 24:1
**involved** [1] - 22:7

**IOWA** [1] - 1:1
**Iowa** [15] - 1:11, 1:12, 1:18, 1:24, 7:7, 7:8, 13:19, 14:11, 26:11, 27:2, 28:18, 28:19, 30:2, 30:14
**ironclad** [1] - 16:1
**issue** [11] - 11:9, 11:13, 12:1, 12:19, 12:21, 13:15, 13:23, 15:10, 15:15, 15:16, 17:9, 17:16, 17:19, 23:14, 24:15
**issues** [4] - 8:21, 9:6, 12:15, 18:13
**itself** [1] - 12:20
**IV** [2] - 18:25, 19:11

**J**

**Jail** [4] - 5:21, 5:25, 21:12, 22:25
**jail** [1] - 8:6
**JR** [1] - 1:6
**Jr** [2] - 3:3, 26:6
**judgment** [4] - 26:5, 27:10, 28:13, 28:21
**jury** [1] - 23:17
**justice** [8] - 6:24, 15:14, 15:16, 15:24, 17:8, 23:8, 23:18

**K**

**keep** [3] - 14:5, 17:25, 22:25
**killed** [1] - 20:8
**kind** [3] - 6:24, 14:20, 22:6
**Kirkwood** [1] - 22:1
**knowingly** [1] - 14:21
**Korth** [1] - 3:5

**L**

**lab** [1] - 9:22
**Lab** [1] - 2:7
**language** [2] - 11:16, 11:19
**large** [4] - 7:23, 12:23, 13:9, 15:9
**large-capacity** [3] - 12:23, 13:9, 15:9
**last** [2] - 12:10, 14:23
**Law** [1] - 1:12
**law** [3] - 11:13, 25:7, 27:17
**LAWRENCE** [1] - 1:10
**lawyers** [1] - 25:25
**leading** [1] - 21:7
**leave** [1] - 23:2
**left** [3] - 5:22, 8:12, 18:24
**letter** [1] - 21:16
**level** [13] - 7:20, 7:21, 8:23, 9:4, 15:5, 15:6, 15:8, 15:14, 17:23, 18:22, 18:25, 19:10, 23:10

**levels** [4] - 7:4, 15:12, 15:13
**lie** [2] - 23:20, 23:23
**life** [2] - 21:7, 22:21
**life-style** [2] - 21:7, 22:21
**limits** [2] - 14:18, 19:18
**Linda** [1] - 30:3
**LINDA** [1] - 1:16
**Linn** [5] - 5:21, 5:25, 21:12, 21:25, 22:25
**listening** [1] - 23:3
**live** [1] - 24:2
**living** [1] - 22:21
**loaded** [2] - 14:4, 14:20
**local** [1] - 27:12
**lodged** [2] - 19:25, 25:1
**look** [2] - 18:5, 22:8
**looking** [1] - 11:1
**Love** [1] - 25:17
**low** [1] - 17:23
**luck** [1] - 29:9
**lying** [1] - 23:20

**M**

**machine** [1] - 1:20
**made** [6] - 5:23, 6:9, 6:15, 19:8, 25:25
**magazine** [17] - 6:4, 7:23, 9:14, 10:2, 10:17, 11:17, 11:18, 11:23, 12:12, 12:20, 12:23, 12:24, 13:9, 15:8, 15:9
**mail** [2] - 4:23, 9:22
**make** [12] - 6:20, 7:2, 9:6, 9:12, 11:12, 18:11, 18:17, 20:15, 23:5, 25:17, 26:3, 26:4
**makes** [1] - 20:24
**making** [1] - 6:25
**malfunction** [1] - 12:25
**manipulate** [1] - 12:4
**manner** [1] - 25:12
**manually** [1] - 10:5
**marijuana** [1] - 24:15
**married** [1] - 23:25
**Marshal** [1] - 28:10
**Matter** [1] - 3:2
**matter** [2] - 9:9, 9:12
**matters** [1] - 11:21
**maximum** [5] - 16:17, 16:18, 16:22, 19:12, 23:9
**McKelvie** [31] - 1:12, 3:9, 4:23, 5:4, 5:6, 5:7, 5:18, 5:20, 6:18, 7:13, 8:5, 9:3, 9:8, 10:21, 10:24, 11:8, 11:10, 12:17, 12:18, 13:14, 15:20, 17:2, 17:3, 17:21, 18:10, 21:3, 21:4, 29:4, 29:5
**McKelvie's** [1] - 9:21
**mean** [2] - 18:9, 18:10
**means** [2] - 27:17, 30:4
**medical** [1] - 25:11

**member** [1] - 24:10
**memorandum** [2] - 6:1, 6:10
**memos** [1] - 4:20
**mentioned** [1] - 9:24
**might** [1] - 11:21
**mine** [1] - 16:10
**mine-run** [1] - 16:10
**minimal** [1] - 24:10
**misdemeanor** [1] - 14:22
**missing** [1] - 12:2
**mistake** [1] - 6:10
**mitigating** [1] - 25:23
**Moines** [1] - 5:3
**mom** [1] - 24:4
**months** [7] - 19:3, 19:12, 19:13, 20:11, 20:18, 25:22, 26:7
**morning** [1] - 4:24
**most** [1] - 25:12
**motion** [4] - 9:1, 18:18, 19:8, 22:11
**motor** [1] - 15:3
**move** [1] - 9:18
**moving** [1] - 18:21
**MR** [34] - 3:7, 3:9, 5:7, 5:13, 5:17, 5:20, 6:18, 7:13, 8:1, 9:7, 9:18, 10:7, 10:15, 10:21, 10:24, 11:4, 11:7, 11:10, 11:15, 12:18, 13:20, 14:10, 14:13, 14:24, 16:5, 17:3, 17:21, 18:10, 18:14, 18:23, 20:20, 21:4, 29:3, 29:5
**Mullins** [1] - 13:6
**Murray** [5] - 1:19, 1:23, 30:2, 30:12, 30:13
**must** [7] - 27:6, 27:9, 27:11, 27:12, 27:13, 27:15, 27:25

**N**

**Nathanson** [1] - 25:17
**Nathanson-Love** [1] - 25:17
**nature** [1] - 23:13
**NDIA** [1] - 30:13
**near** [1] - 16:17
**needed** [1] - 25:10
**needs** [1] - 26:19
**neighborhood** [1] - 25:1
**never** [1] - 23:2
**next** [1] - 28:20
**night** [2] - 12:10, 20:3
**normal** [1] - 15:22
**Northern** [1] - 28:18
**NORTHERN** [1] - 1:1
**note** [3] - 6:9, 12:10, 13:14
**noted** [1] - 12:15
**notes** [1] - 6:1
**nothing** [1] - 27:23
**notice** [2] - 28:16, 28:19
**noting** [1] - 15:22
**November** [1] - 1:17

*Contact Patrice Murray at 319-286-2338 or patrice_murray@iand.uscourts.gov*
*to purchase a complete copy of the transcript.*
Case 2:16-cr-01011-CJW-MAR   Document 102   Filed 12/20/16   Page 34 of 37

## O

**objected** [1] - 28:4
**objecting** [2] - 6:2, 6:4
**objection** [4] - 7:19, 9:4, 10:20, 10:23
**objections** [3] - 5:15, 5:23, 6:16
**obstruction** [7] - 6:24, 15:13, 15:16, 15:24, 17:7, 23:8, 23:18
**obstructive** [1] - 18:16
**obviously** [1] - 24:23
**occasion** [2] - 13:2, 13:4
**occupants** [1] - 20:3
**occupied** [1] - 19:19
**October** [1] - 21:15
**OF** [2] - 1:1, 1:3
**offense** [18] - 3:17, 3:22, 7:6, 7:20, 7:21, 8:23, 8:25, 9:4, 15:5, 15:6, 15:8, 15:14, 18:24, 19:10, 23:13, 25:5, 26:9, 26:25
**Office** [5] - 1:12, 3:4, 7:6, 16:7, 27:7
**official** [1] - 5:9
**old** [1] - 16:10
**once** [2] - 7:1, 17:6
**one** [13] - 6:2, 6:4, 12:22, 13:1, 13:5, 13:23, 14:23, 18:3, 19:19, 19:25, 20:8, 21:11, 27:16
**open** [1] - 3:1
**operable** [1] - 13:6
**operate** [2] - 15:9, 15:10
**operates** [1] - 11:25
**operating** [2] - 12:20, 24:22
**opportunity** [2] - 21:25, 26:3
**option** [1] - 3:20
**order** [4] - 10:5, 26:8, 27:10, 28:7
**ordered** [3] - 26:9, 26:25, 28:5
**Ordered** [1] - 1:21
**original** [1] - 9:21
**otherwise** [4] - 14:16, 16:25, 20:6, 23:21
**outer** [1] - 19:24
**overall** [1] - 18:6
**own** [1] - 8:18

## P

**p.m** [2] - 1:18, 29:11
**P.O** [1] - 1:12
**page** [1] - 18:12
**Paragraph** [4] - 7:4, 8:3, 8:23, 13:13
**paragraph** [2] - 8:10
**Paragraphs** [1] - 28:3

**participate** [1] - 26:19
**particularly** [1] - 24:22
**parties** [6] - 4:19, 8:4, 11:12, 15:17, 30:8, 30:9
**pass** [1] - 21:19
**path** [1] - 21:9
**Patrice** [5] - 1:19, 1:23, 30:2, 30:12, 30:13
**Patrick** [1] - 3:5
**pay** [1] - 28:7
**PD** [1] - 11:2
**penalty** [1] - 3:17
**pending** [1] - 26:8
**penetrated** [2] - 19:24, 20:5
**penetrating** [1] - 19:22
**people** [2] - 22:7, 23:19
**perfectly** [1] - 12:5
**performance** [1] - 25:3
**permission** [2] - 9:14, 21:16
**person** [18] - 3:14, 6:11, 6:13, 7:24, 12:22, 14:3, 14:17, 14:18, 16:10, 17:14, 17:24, 18:2, 21:2, 21:11, 21:17, 22:2, 22:6, 27:7
**personally** [1] - 3:11
**Pete** [24] - 3:3, 3:11, 3:12, 4:7, 5:10, 5:18, 5:22, 6:22, 8:5, 15:2, 17:8, 19:18, 21:5, 21:12, 22:16, 23:24, 24:18, 26:1, 26:2, 26:6, 26:16, 27:4, 28:12, 29:6
**PETE** [1] - 1:6
**Pete's** [1] - 24:4
**phrase** [1] - 16:10
**picture** [1] - 24:3
**piled** [1] - 22:9
**pistol** [3] - 14:19, 14:21, 15:3
**pitfall** [1] - 25:21
**place** [2] - 30:3, 30:6
**plain** [1] - 11:16
**Plaintiff** [1] - 1:4
**plans** [1] - 21:22
**play** [1] - 9:25
**played** [2] - 5:5, 11:5
**playing** [1] - 10:20
**plea** [4] - 4:9, 4:12, 4:15, 7:23
**plead** [1] - 18:15
**pleading** [3] - 3:13, 17:12, 17:18
**pleased** [1] - 21:18
**point** [3] - 5:15, 7:18, 9:11
**points** [4] - 17:12, 17:17, 18:7, 18:9
**policy** [2] - 12:6, 17:9
**poor** [1] - 25:2
**posing** [1] - 16:13
**positive** [2] - 24:3, 24:9
**possess** [3] - 27:12, 27:13, 27:18
**possessed** [2] - 16:23, 18:2

**possessing** [1] - 14:2
**possession** [8] - 3:15, 6:3, 6:12, 7:4, 8:24, 16:10, 17:24, 27:20
**possible** [3] - 11:20, 13:23, 14:2
**potential** [1] - 16:7
**precedent** [1] - 7:11
**present** [3] - 3:11, 7:1, 19:15
**presentence** [9] - 4:18, 5:11, 5:19, 5:24, 6:20, 8:6, 20:2, 24:1, 28:3
**pressure** [1] - 23:22
**pretty** [2] - 17:23, 18:1
**primarily** [1] - 6:2
**print** [1] - 30:4
**prison** [2] - 3:18, 27:4
**Prisons** [3] - 26:7, 26:16, 27:6
**Prisons'** [2] - 26:17, 26:20
**probation** [3] - 3:20, 19:4, 23:24
**Probation** [5] - 3:4, 7:6, 16:6, 27:7, 28:6
**problem** [2] - 10:3, 24:12
**problems** [1] - 24:20
**proceed** [1] - 11:11
**proceeding** [3] - 13:20, 14:6, 22:17
**Proceedings** [1] - 29:11
**proceedings** [3] - 3:1, 30:4, 30:6
**process** [2] - 6:25, 12:8
**Program** [1] - 26:21
**program** [1] - 26:22
**prohibited** [7] - 3:14, 6:13, 7:24, 14:3, 16:10, 17:24, 21:1
**promote** [1] - 25:6
**properly** [1] - 12:20
**prosecuted** [1] - 27:21
**protect** [1] - 25:8
**prove** [1] - 8:22
**provide** [4] - 15:2, 21:23, 23:16, 25:10
**provided** [2] - 14:16, 21:25
**provisions** [2] - 4:8, 19:5
**proximity** [1] - 26:17
**public** [2] - 24:24, 25:9
**punishment** [1] - 25:7
**purpose** [1] - 4:12
**purposes** [1] - 13:20
**pursuant** [1] - 26:23
**pursue** [1] - 21:22
**push** [1] - 10:10
**pushing** [1] - 12:4

## Q

**qualifies** [1] - 11:17
**quite** [3] - 10:16, 16:16, 24:6

## R

**raised** [2] - 12:6, 13:15
**range** [5] - 16:15, 19:1, 19:11, 20:23, 26:2
**Rapids** [5] - 1:10, 1:18, 1:24, 28:19, 30:14
**rare** [1] - 23:11
**read** [5] - 4:17, 8:13, 8:18, 9:4, 24:4
**Reade** [1] - 30:3
**READE** [1] - 1:16
**readiness** [1] - 21:20
**reading** [2] - 8:17, 8:19
**ready** [2] - 9:25, 23:4
**realize** [1] - 22:20
**realizes** [1] - 21:6
**really** [4] - 16:25, 17:22, 23:14, 24:7
**reason** [2] - 16:14, 27:18
**reasons** [1] - 15:7
**receipt** [1] - 28:25
**receive** [6] - 4:24, 13:10, 15:24, 17:17, 22:24, 27:22
**received** [5] - 4:17, 4:24, 10:23, 11:3, 22:25
**recent** [1] - 16:21
**recognize** [2] - 7:9, 16:19
**recommend** [3] - 26:16, 26:19, 26:24
**recommendations** [1] - 26:15
**recommended** [1] - 19:4
**record** [2] - 20:16, 30:6
**recording** [1] - 11:5
**records** [2] - 5:9, 25:15
**recovered** [1] - 12:11
**rectify** [1] - 21:9
**reduced** [1] - 30:4
**reduction** [1] - 18:20
**reference** [2] - 19:8, 28:5
**reflect** [1] - 25:5
**refrigerator** [1] - 19:25
**regard** [3] - 6:9, 7:3, 19:7
**regarding** [3] - 6:20, 17:21, 21:1
**reinforced** [1] - 24:13
**related** [1] - 30:7
**relationship** [1] - 24:4
**relative** [1] - 30:8
**release** [6] - 3:19, 19:3, 27:5, 27:6, 27:9, 27:25
**released** [1] - 27:8
**relied** [1] - 9:3
**relies** [1] - 11:19
**reloading** [1] - 12:8
**rely** [2] - 13:21, 14:6
**relying** [4] - 13:18, 14:9, 14:14, 14:23
**remaining** [1] - 5:14

*Contact Patrice Murray at 319-286-2338 or patrice_murray@iand.uscourts.gov*
*to purchase a complete copy of the transcript.*

Case 2:16-cr-01011-CJW-MAR   Document 102   Filed 12/20/16   Page 35 of 37

**remanded** [1] - 28:9
**remember** [3] - 4:7, 8:5, 8:9
**reminder** [1] - 27:16
**render** [1] - 15:11
**rendered** [1] - 11:23
**Report** [1] - 2:7
**report** [17] - 4:18, 5:12, 5:19, 5:21, 5:24, 6:20, 8:7, 8:13, 8:18, 10:18, 12:15, 13:1, 20:2, 21:18, 24:1, 27:7, 28:3
**reported** [2] - 1:19, 30:3
**Reporter** [2] - 1:20, 30:2
**represent** [1] - 28:24
**represented** [1] - 3:5
**request** [5] - 9:22, 17:22, 18:5, 22:8, 22:14
**requested** [2] - 4:4, 4:5
**requests** [1] - 20:20
**reset** [3] - 10:5, 13:2, 13:3
**Residential** [1] - 26:20
**residential** [1] - 25:1
**residing** [1] - 20:2
**respect** [2] - 18:14, 25:6
**respectfully** [4] - 13:8, 18:5, 22:8, 22:14
**responsibility** [8] - 15:15, 15:21, 15:25, 17:5, 17:15, 17:18, 18:21, 23:9
**restitution** [1] - 4:4
**results** [1] - 24:9
**returning** [1] - 11:1
**review** [1] - 5:22
**reviewed** [1] - 5:21
**revolver** [3] - 14:19, 14:22, 15:3
**rights** [1] - 28:13
**risk** [2] - 16:13, 24:24
**RMR** [2] - 1:23, 30:13
**Robert** [2] - 19:19, 20:3
**rounds** [3] - 12:24, 19:25, 20:5
**RPR** [2] - 1:23, 30:13
**rule** [1] - 16:1
**ruled** [1] - 18:3
**ruling** [1] - 9:12
**run** [3] - 16:10, 26:9, 26:25

## S

**S.E** [4] - 1:10, 1:18, 1:24, 30:14
**sadly** [1] - 24:4
**safekeeping** [1] - 11:2
**safety** [1] - 24:24
**sample** [1] - 27:15
**satisfied** [1] - 15:4
**saw** [1] - 13:3
**scene** [1] - 12:11
**school** [4] - 8:16, 24:5, 24:7, 24:8
**score** [1] - 23:11

**scored** [1] - 15:12
**scoring** [6] - 5:16, 7:4, 7:12, 8:23, 8:24, 20:7
**Scott** [4] - 19:19, 19:21, 20:1, 20:4
**Scott's** [1] - 25:2
**second** [3] - 5:23, 6:4, 10:3
**Section** [4] - 7:8, 7:9, 23:7, 26:24
**section** [3] - 14:11, 14:16, 28:2
**security** [1] - 26:18
**see** [4] - 8:15, 10:8, 10:9, 12:3
**seem** [1] - 9:10
**semiautomatic** [2] - 7:22, 12:23
**sentence** [20] - 5:16, 16:17, 16:20, 16:23, 19:13, 20:10, 20:14, 20:17, 20:19, 20:21, 22:13, 22:15, 25:4, 25:10, 25:13, 25:14, 25:22, 26:24, 27:22, 28:21
**sentenced** [1] - 4:12
**SENTENCING** [1] - 1:15
**sentencing** [7] - 3:4, 4:20, 6:1, 6:8, 6:10, 25:21, 27:21
**September** [1] - 4:19
**serious** [2] - 24:11, 25:6
**seriousness** [1] - 25:5
**serve** [1] - 26:7
**services** [1] - 28:23
**set** [4] - 15:23, 27:10, 28:1, 30:10
**Seventh** [4] - 1:10, 1:17, 1:24, 30:14
**Shaw** [1] - 25:17
**shooting** [4] - 5:3, 12:11, 13:25, 24:25
**Shorthand** [1] - 1:19, 30:2
**shorthand** [2] - 1:20, 30:4
**shot** [5] - 10:3, 10:4, 10:10, 13:1, 18:4
**shots** [7] - 10:4, 10:6, 19:18, 19:22, 19:23, 20:5, 25:1
**show** [1] - 14:9
**significantly** [1] - 8:3
**similar** [2] - 25:15
**simply** [1] - 16:25
**situation** [5] - 6:23, 13:7, 18:6, 20:7, 21:8
**skills** [1] - 8:17
**SMCR116777** [1] - 27:3
**SMCR116778** [1] - 27:3
**SMCR117744** [1] - 27:3
**SMCR117745** [1] - 27:3
**solely** [1] - 13:21
**sooner** [1] - 21:14
**sorry** [2] - 3:25, 6:18
**sort** [5] - 16:9, 17:9, 17:10, 17:12, 17:16

**sounds** [1] - 24:5
**special** [5] - 4:6, 19:6, 28:1, 28:2, 28:8
**specifically** [1] - 19:17
**spend** [1] - 23:14
**spite** [2] - 8:16, 23:8
**spoken** [1] - 13:15
**Spruce** [1] - 16:11
**squared** [1] - 8:22
**squarely** [1] - 13:22
**standard** [1] - 27:9
**start** [1] - 16:3
**started** [2] - 17:23, 22:23
**state** [5] - 3:6, 6:5, 26:13, 27:11, 27:18
**State** [1] - 30:2
**statement** [1] - 4:4
**statements** [1] - 25:25
**states** [1] - 10:18
**STATES** [2] - 1:1, 1:3
**States** [12] - 1:11, 1:23, 3:3, 3:4, 3:8, 7:10, 13:5, 23:7, 26:24, 28:10, 28:17, 30:13
**stating** [1] - 6:5
**status** [1] - 6:14
**statute** [2] - 14:3, 14:8
**statutory** [3] - 16:16, 16:18, 19:12
**still** [2] - 4:15, 20:14
**story** [1] - 19:20
**straight** [1] - 14:5
**street** [1] - 24:11
**Street** [1] - 16:12
**stress** [1] - 11:16
**structure** [1] - 19:24
**studied** [1] - 25:16
**style** [2] - 21:7, 22:21
**Sub** [1] - 14:15
**subjects** [1] - 21:21
**submit** [3] - 12:8, 13:4, 17:16
**submitted** [2] - 4:3, 21:13
**subsequent** [2] - 10:4, 10:5
**substance** [4] - 24:15, 24:20, 26:21, 27:13
**substantial** [2] - 16:20, 27:22
**substantially** [1] - 23:11
**suggestion** [1] - 6:19
**superseding** [1] - 3:13
**supervised** [5] - 3:19, 19:3, 27:5, 27:8, 27:25
**supervision** [4] - 25:3, 27:10, 28:2, 30:5
**system** [2] - 23:19, 23:21

## T

**talk** [8] - 7:15, 7:18, 8:4, 13:13, 15:18, 15:19, 15:20, 28:12
**talked** [3] - 8:6, 9:9, 29:7

**teleconference** [1] - 3:5
**telling** [1] - 23:20
**term** [6] - 3:18, 3:19, 19:4, 26:8, 26:10, 27:1
**terms** [4] - 7:23, 10:2, 14:7, 26:15
**testimony** [1] - 23:17
**tests** [1] - 21:19
**THE** [58] - 1:1, 1:1, 1:16, 3:2, 3:11, 3:16, 3:17, 3:25, 4:10, 4:11, 4:14, 4:15, 4:16, 4:17, 5:8, 5:14, 5:18, 6:17, 7:3, 7:14, 8:2, 8:8, 8:9, 8:11, 8:12, 8:14, 8:15, 8:20, 8:21, 9:16, 10:1, 10:14, 10:19, 10:22, 10:25, 11:6, 11:8, 11:11, 12:17, 13:12, 14:7, 14:12, 14:15, 15:1, 17:2, 17:20, 18:9, 18:11, 18:19, 18:24, 21:3, 22:16, 22:19, 23:4, 29:4, 29:6, 29:8, 29:9
**themselves** [1] - 9:10
**therefore** [2] - 6:14, 13:4
**they've** [1] - 17:14
**thinks** [1] - 14:8
**third** [1] - 18:22
**three** [2] - 9:13, 14:2
**Tim** [2] - 3:7, 5:1
**TIMOTHY** [1] - 1:10
**today** [2] - 4:12, 25:4
**took** [1] - 5:24
**top** [1] - 20:23
**total** [2] - 18:24, 19:10
**training** [2] - 21:22, 25:11
**transcript** [1] - 30:5
**Transcript** [2] - 1:21, 1:21
**transcription** [1] - 30:5
**transported** [1] - 15:2
**transports** [1] - 14:21
**Treatment** [1] - 26:21
**treatment** [3] - 24:15, 25:12, 26:22
**trigger** [7] - 10:4, 10:11, 10:13, 10:15, 12:1, 12:2, 13:2
**true** [1] - 30:5
**truth** [1] - 23:20
**try** [3] - 21:8, 22:3, 24:15
**trying** [1] - 25:20
**two** [6] - 6:2, 7:6, 9:6, 23:16, 23:19, 23:25
**type** [1] - 14:1

## U

**U.S** [1] - 1:10
**under** [13] - 6:11, 11:16, 12:13, 13:4, 13:13, 14:15, 16:7, 19:8, 20:6, 23:6, 23:12, 26:13, 30:5
**underlying** [4] - 6:5, 6:21, 7:6, 17:6

*Contact Patrice Murray at 319-286-2338 or patrice_murray@iand.uscourts.gov*
*to purchase a complete copy of the transcript.*

Case 2:16-cr-01011-CJW-MAR   Document 102   Filed 12/20/16   Page 36 of 37

**undisputed** [2] - 9:10, 11:24
**unfairness** [1] - 17:10
**UNITED** [2] - 1:1, 1:3
**United** [12] - 1:11, 1:23, 3:2, 3:4, 3:7, 7:10, 13:5, 23:7, 26:24, 28:10, 28:17, 30:13
**unless** [1] - 22:18
**unsuccessfully** [1] - 24:16
**unusual** [1] - 15:23
**unwarranted** [2] - 25:14, 25:19
**up** [8] - 9:1, 19:2, 19:22, 22:9, 22:13, 24:19, 27:21, 28:20
**upbringing** [1] - 23:25
**upward** [9] - 9:1, 13:24, 16:7, 16:8, 17:7, 17:22, 18:6, 19:1, 19:10
**US** [1] - 29:1
**use** [2] - 16:9, 26:3
**user** [1] - 7:25
**uses** [1] - 10:10
**using** [1] - 1:20

## V

**Vanessa** [2] - 19:20, 20:4
**variance** [1] - 22:12
**vary** [1] - 26:1
**Vavricek** [11] - 3:7, 5:11, 7:15, 9:5, 9:17, 15:7, 15:19, 16:3, 18:13, 20:17, 29:2
**VAVRICEK** [21] - 1:10, 3:7, 5:13, 5:17, 8:1, 9:7, 9:18, 10:7, 10:15, 11:4, 11:7, 11:15, 13:20, 14:10, 14:13, 14:24, 16:5, 18:14, 18:23, 20:20, 29:3
**vehicle** [2] - 14:21, 15:3
**version** [2] - 9:20, 9:21
**versus** [3] - 3:3, 7:10, 13:5
**victim** [1] - 4:4
**victims** [2] - 3:22, 4:3
**video** [4] - 9:24, 10:8, 12:3, 13:3
**Video** [1] - 2:8
**view** [2] - 5:15, 11:21
**violating** [1] - 14:3
**violation** [2] - 6:7, 7:7
**virtue** [1] - 17:25
**vocational** [1] - 25:11
**VS** [1] - 1:5

## W

**Walker** [3] - 7:10, 13:21, 14:6
**want** [8] - 10:12, 11:14, 12:23, 13:25, 15:19, 18:12, 22:18, 22:19
**wanted** [1] - 18:11

**wants** [1] - 26:4
**watch** [1] - 5:1
**weapon** [5] - 12:23, 14:4, 14:17, 15:18, 27:14
**weapons** [8] - 7:7, 7:12, 13:16, 14:3, 14:5, 14:24, 15:13, 22:7
**wearing** [1] - 10:9
**Webster** [1] - 16:22
**weighed** [2] - 25:23, 25:24
**whatsoever** [1] - 27:23
**WHEREOF** [1] - 30:10
**whole** [1] - 23:21
**Williams** [3] - 19:20, 20:1, 20:4
**Williams'** [1] - 25:2
**wish** [2] - 7:15, 11:12
**withstand** [1] - 23:22
**WITNESS** [1] - 30:10
**women** [1] - 23:19
**work** [1] - 10:16
**worked** [1] - 12:5
**written** [3] - 9:23, 28:16, 28:19

## Y

**year** [1] - 16:22
**years** [5] - 3:18, 3:19, 3:21, 19:4, 27:5
**yesterday** [1] - 9:20

*Contact Patrice Murray at 319-286-2338 or patrice_murray@iand.uscourts.gov*
*to purchase a complete copy of the transcript.*

Case 2:16-cr-01011-CJW-MAR   Document 102   Filed 12/20/16   Page 37 of 37