United States Court of Appeals
For the Eighth Circuit
_____

No. 16-4152
_____

United States of America

*Plaintiff - Appellee*

v.

Camron Andrew Pete, Jr., also known as Dreadhead, also known as Cam, also known as Cam Stunt Montana, also known as Camron Montana

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Northern District of Iowa - Dubuque
_____

Submitted: December 11, 2017
Filed: February 12, 2018
[Unpublished]
_____

Before WOLLMAN, LOKEN, and MELLOY, Circuit Judges.
_____

PER CURIAM.

Camron Andrew Pete, Jr., pleaded guilty to possession of a firearm by an unlawful user of controlled substances in violation of 18 U.S.C. §§ 922(g)(3) and

924(a)(2). The district court[1] sentenced him to 120 months' imprisonment. We affirm.

On December 1, 2015, police officers responded to a report of shots fired in a residential neighborhood in Dubuque, Iowa. The officers discovered that an occupied apartment had been shot multiple times, causing damage to the windows, the siding, and a refrigerator. A neighbor's garage had also been shot. No one was injured. Nearby, the officers located several spent 9mm casings and a Ruger 16-round, 9mm magazine that contained seven rounds of ammunition.

A few days later, police officers stopped Pete and Reginald Shaw, Jr., after the men reportedly had forced themselves into Pete's ex-girlfriend's apartment. The officers found a digital scale and 1.1 grams of crack cocaine in Pete's backpack. During a search of the vehicle, officers found ammunition and three loaded firearms, including a Ruger 9E 9mm handgun that had a round in the chamber and which was loaded with a ProMag 30-round magazine.

Shaw eventually admitted to the December 1 shooting, explaining that Pete was upset with an individual who lived at the apartment. Shaw explained that he had accompanied Pete to the apartment and that Pete alone had shot at the apartment, using the Ruger handgun, as well as another firearm that officers found in the vehicle.

The U.S. Probation Office's presentence report (PSR) calculated Pete's sentencing range under the U.S. Sentencing Guidelines Manual (Guidelines or U.S.S.G.). The PSR determined that Pete's base offense level was 20 because the offense involved a semiautomatic firearm that was capable of accepting a large capacity magazine. See U.S.S.G. § 2K2.1(a)(4)(B). The PSR recommended that

---

[1] The Honorable Linda R. Reade, then Chief Judge, United States District Court for the Northern District of Iowa.

-2-

Case 2:16-cr-01011-CJW-MAR   Document 109   Filed 02/12/18   Page 2 of 5
Appellate Case: 16-4152   Page: 2   Date Filed: 02/12/2018 Entry ID: 4628972

Pete's offense level be increased by 4 because he committed the federal firearms offense in connection with the Iowa offenses of carrying weapons in violation of Iowa Code § 724.4(1) and going armed with intent in violation of Iowa Code § 708.8. See U.S.S.G. § 2K1.1(b)(6)(B). After applying other adjustments not challenged on appeal, the PSR determined that Pete's total offense level was 25, his criminal history category was IV, and his advisory sentencing range was 84 to 105 months' imprisonment. The PSR suggested that an upward departure might be appropriate because Pete had discharged two firearms into an occupied residence. See U.S.S.G. §§ 5K2.0, 5K2.6.

Over Pete's objections, the district court adopted the calculations set forth in the PSR and applied a 5-level upward departure, resulting in an advisory sentencing range of 135 to 168 months' imprisonment. Because the sentencing range exceeded the statutory maximum term of imprisonment of 10 years, see 18 U.S.C. § 924(a)(2), the district court imposed a 120-month sentence.

Pete first argues that the district court erred in determining his base offense level because his offense did not involve a "semiautomatic firearm capable of accepting a large capacity magazine," as required under U.S.S.G. § 2K2.1(a)(4)(B). The Guidelines define that term as "a semiautomatic firearm that has the ability to fire many rounds without reloading because at the time of the offense (A) the firearm had attached to it a magazine or similar device that could accept more than 15 rounds of ammunition." U.S.S.G. § 2K2.1 cmt. n.2. There is no dispute that Pete's firearm meets the first part of the definition: the Ruger 9E 9mm handgun is a semiautomatic firearm that can fire many rounds without reloading. Nor is there any dispute about the second part, for the ProMag 30-round magazine was attached to the Ruger handgun.

Pete argues, however, that a lower base offense level should apply because the ProMag magazine rendered the Ruger handgun inoperable. We have suggested that

-3-

Case 2:16-cr-01011-CJW-MAR   Document 109   Filed 02/12/18   Page 3 of 5
Appellate Case: 16-4152   Page: 3   Date Filed: 02/12/2018 Entry ID: 4628972

U.S.S.G. § 2K2.1(a)(4)(B) might not apply "in the unusual case where attaching the large capacity magazine rendered or would render the semiautomatic firearm inoperable." United States v. Davis, 668 F.3d 576, 579 (8th Cir. 2012). Considering this hypothetical in light of the facts here, Pete's argument fails because the court found that the ProMag magazine "will and does operate in the firearm at issue, and it does fire." That finding was supported by evidence presented during the sentencing hearing, including the Ruger firearm and the ProMag magazine themselves, a video of a federal agent repeatedly firing the Ruger handgun with the ProMag magazine attached, and a state agent's report explaining that the "Pro-Mag magazine . . . intermittently functioned in the Ruger pistol." According to the report, the ProMag magazine was "slightly modified to fit the Ruger pistol," which "cause[d] the internal trigger bar to not move correctly" and sometimes required the trigger to manually reset. Although the ProMag magazine might not have worked perfectly when used in the Ruger handgun, it did not render the semiautomatic firearm inoperable.

Pete next challenges the application of the sentencing enhancement set forth in U.S.S.G. § 2K2.1(b)(6)(B) for using or possessing a firearm in connection with another felony offense.[2] He argues that application of the enhancement constitutes impermissible double counting because the federal firearms offense is inextricably entwined with the Iowa offense of carrying weapons in violation of Iowa Code § 724.4(1). See U.S.S.G. § 2K2.1 cmt. n.14(C) (defining "another felony offense" to mean a felony offense "other than the explosive or firearms possession or trafficking offense"). This argument is foreclosed by our decision in United States v. Walker, in which we explained that a violation of Iowa Code § 724.4(1) supports the application of U.S.S.G. § 2K2.1(b)(6)(B) because a defendant does not "automatically commit the [Iowa] felony when he violate[s] 18 U.S.C. § 922(g) by possessing a firearm as a [prohibited person]." 771 F.3d 449, 452-53 (8th Cir. 2014) (quoting

---

[2]The government did not rely upon the Iowa offense of going armed with intent to support the application of this enhancement.

-4-

United States v. Jackson, 633 F.3d 703, 707 (8th Cir. 2011)). Pete also argues that his Sixth Amendment right to trial by jury was violated by the district court's application of the enhancement. This argument is likewise foreclosed by circuit precedent. See United States v. Boots, 816 F.3d 971, 975 n.3 (8th Cir. 2016) (explaining that "[a] separate trial by a jury is not required to prove that 'another felony offense' has been committed") (citing United States v. Bridges, 569 F.3d 374, 377 (8th Cir. 2009)).

Finally, Pete challenges the district court's decision to depart upward by 5 levels under U.S.S.G. § 5K2.6 for using or possessing a weapon or dangerous instrumentality. He contends that the pre-departure Guidelines calculation had fully accounted for his relevant conduct and that the district court thus engaged in double counting when it departed upward. "Double counting occurs if one part of the Guidelines is applied to increase a defendant's punishment on account of a kind of harm that has already been fully accounted for by application of another part." United States v. Peeples, 879 F.3d 282, 288 (8th Cir. 2018) (internal quotation marks omitted) (quoting United States v. Donelson, 450 F.3d 768, 774 (8th Cir. 2006)). While the Guidelines may have accounted for the harm caused by Pete's possession of a firearm, they did not necessarily account for the harm caused by Pete's discharging a firearm into an occupied apartment, conduct that the district court described as "very, very dangerous, intentional conduct." See U.S.S.G. § 5K2.6 ("The discharge of a firearm might warrant a substantial sentence increase.").

The sentence is affirmed.

_____

-5-

Case 2:16-cr-01011-CJW-MAR Document 109 Filed 02/12/18 Page 5 of 5
Appellate Case: 16-4152 Page: 5 Date Filed: 02/12/2018 Entry ID: 4628972